United States District Court
Southern District of Texas
**ENTERED**
August 17, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASWANT SINGH GILL, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-02502 |
| | § | |
| JAGMOHAN SINGH GREWAL, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Pending before the Court in the above-referenced case is Plaintiff/Counter-Defendants Jaswant Singh Gill ("J. Gill"); Shaun Singh Gill ("S. Gill"); Doc Call Live, LLC; Healthema, LLC ("Healthema"); Cymed Management Associates, LLC; Balbindar Gill, LLC; and Cymed Tomball, P.A. (collectively, "Plaintiff/Counter-Defendants"), Motion to Abate and Compel Arbitration ("Motion"). (Doc. 24.) Upon review of the Motion, responses thereto,[1] the relevant legal authority, and for the reasons explained below, the Court finds that Plaintiff/Counter-Defendants' Motion should be denied.

### I.   BACKGROUND

On or about November 20, 2010, Defendant/Counter-Plaintiff Jagmohan Singh Grewal ("Grewal") and J. Gill formed Healthema and executed a Limited Liability Company Operating Agreement ("HOA") for the company. (Doc. 10 at ¶ 10.) There were no other members of Healthema, and Grewal and J. Gill equally shared rights to participate in the management and affairs of the company. (*Id.*) S. Gill, the son of J. Gill and a non-member of Healthema, was appointed CEO and general counsel. (*Id.*) In a written addendum to the HOA, all decisions

---

[1] Defendant/Counter-Plaintiff Grewal filed a response (Doc. 25), Plaintiff/Counter-Defendants filed a reply (Doc. 27), and Grewal filed a sur-reply (Doc. 28).

regarding the "budgetary, fiduciary and strategic direction of Healthema" were to be shared by Grewal, J. Gill, and S. Gill. (*Id.*) Pursuant to a separate written employment agreement, Grewal was to serve as strategic advisor for three years at a monthly salary of $10,000.00. (*Id.* at ¶ 12.)

Around January 23, 2011, a dispute arose between Grewal, S. Gill, and J. Gill. (*Id.*) Grewal alleges S. Gill unilaterally terminated his employment and has excluded him from participating in business affairs since. (*Id.* at ¶ 13.) In the fall of 2014, both Grewal and Plaintiff/Counter-Defendants initiated lawsuits that have since been consolidated in this Court. (Doc. 7.) Since consolidation, both parties have conducted discovery into the merits of the case. (Doc. 25 at ¶¶ 5–6.) Plaintiff/Counter-Defendants conducted a deposition of Grewal in September 2015, where Grewal acknowledged his awareness of an arbitration clause in his employment contract. (Doc. 25-4.) Due to the inter-relatedness of the claims, Plaintiff/Counter-Defendants now seek to invoke the arbitration clause and have the contractual dispute settled in arbitration and all other claims abated until a time in which the arbitration has been completed. (Doc. 24 at 5.)

## II.  STANDARD OF REVIEW

A party waives his right to compel arbitration when he substantially invoke the judicial process to the other party's detriment or prejudice. *Richmont Holdings, Inc. v. Superior Recharge Sys., LLC*, 455 S.W.3d 573, 574–75 (Tex. 2014) (per curiam). To substantially invoke the judicial process, a party must engage in conduct inconsistent with the intent to seek arbitration. *G.T. Leach Builders LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015) (citations omitted). The Texas Supreme Court has held that "'allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial'" are sufficient to invoke the judicial process. *Perry Homes v. Cull*, 258 S.W.3d 580, 590 (Tex. 2008)

(quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 764 (Tex. 2006)). The court will also consider factors such as: (1) whether the movant was the plaintiff or defendant; (2) the length of movant's delay before seeking arbitration; (3) whether the movant knew of the arbitration clause the whole time; (4) the extent of pre-trial activity that occurred in relation to the merits as opposed to arbitrability or jurisdiction; (5) the amount of time and expense the parties have incurred in litigation; (6) whether the movant sought or opposed arbitration at an earlier point in the case; (7) whether the movant filed affirmative claims or dispositive motions; (8) what discovery would have been unavailable during arbitration; (9) whether the activity in court would be duplicated in arbitration; and (10) when the case was to be tried. *Id.* at 591. Courts decide the question of whether or not there was a waiver of arbitration by applying a totality-of-the-circumstances test on a case-by-case basis, and not all of the key factors have to be present for a party to waive his right to compel arbitration. *Id.* at 590–93. While not all factors must be present, Texas favors a strong presumption against the waiver of arbitration and the burden to overcome such a presumption is a high one. *Perry Homes*, 258 S.W.3d at 584.

### III. DISCUSSION

#### A. Whether the Judicial Process Was Substantially Invoked

The Fifth Circuit has held that when a plaintiff files suit without asserting an arbitration clause, it satisfies the substantial invocation of the judicial-process requirement, unless an exception exists. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009.) While not an exhaustive list, past exceptions have included filing suit for the purpose of obtaining a threshold declaration stating that an arbitration agreement existed, or filing a claim to seek injunctive relief while arbitration is pending. *Id. See also Republic Ins. Co. v. Paico Receivables LLC*, 383 F.3d 341, 345 (5th Cir. 2004); Joseph, 249 Fed. App'x at 991. A party that files suit, absent an

exception, strongly demonstrates a desire to resolve the dispute through litigation rather than arbitration. *Nicholas*, 565 F.3d at 908.

### i. Filing Suit

Plaintiff/Counter-Defendants' Motion argues that they never denied or opposed the right to seek arbitration and insists that they were blocked from seeking arbitration because they were unaware of Grewal's address and believed he was living somewhere in India. (Doc. 24 ¶ 13.) In response, Grewal argues that since similar claims in a related dispute were being litigated in India between the parties, resulting in correspondence and notices being received at his home address from Plaintiff/Counter-Defendants' attorney in India, Plaintiff/Counter-Defendants' argument that they filed suit because they could not locate Grewal is disingenuous. (Doc. 25 at ¶¶ 21–22.) Grewal further asserts that Plaintiff/Counter Defendants knew who Grewal's legal counsel was and, because they were in contact with him, they could have initiated arbitration through him. (*Id.* at ¶ 23; Doc. 25-12.) Grewal argues that the judicial process was therefore invoked and waiver occurred when Plaintiff/Counter-Defendants filed suit rather than seeking arbitration. (Doc. 25 ¶¶ 18–19.)

Grewal relies heavily upon *Nicholas* to make this argument. (*Id.* at ¶¶ 19–20.) *Nicholas* is a Fifth Circuit case involving a lawsuit originally filed in Texas state court after Nicholas' deceased husband's former employer allegedly violated a severance agreement by not paying life insurance benefits. *Nicholas*, 565 F.3d at 906. The case was removed to federal court and the district court found all of Nicholas's state-law claims to be preempted by federal law. *Id.* On appeal, the Fifth Circuit found Nicholas had waived her right to compel arbitration by substantially invoking the judicial process because she did not file a motion to compel arbitration until after she had filed both original and amended complaints that made no reference to an

arbitration clause, the court had issued a scheduling order, written discovery had taken place, and her deposition had been taken. *Id.* at 909.

Grewal argues that similar to the *Nicholas* plaintiff who waived her right to arbitrate by allowing her case to progress for months through various stages of the litigation process without complaint, Plaintiff/Counter-Defendants invoked the judicial process by not raising arbitration claims until long after they had filed suit, discovery was underway, and trial was near. (Doc. 25 at ¶ 19.) Grewal further contends that Plaintiff/Counter-Defendants do not have a valid exception under *Nicholas*. (*Id.* at ¶ 21.)

Plaintiff/Counter-Defendants claim they were unaware of Grewal's whereabouts because all certified mail sent to his California address was returned unopened and Grewal's demand letter was sent by Mr. Singhal, an attorney in Houston, Texas. (Doc. 27 at ¶ 5.) While Plaintiff/Counter-Defendants do not dispute S. Gill met with Mr. Singhal, they argue the meeting did not disclose Grewal's location, and Mr. Singhal did not indicate that he would be representing Grewal. (*Id.*) They argue that based on this knowledge they could not have effectively served Mr. Singhal on behalf of Grewal. (*Id.*) Plaintiff/Counter-Defendants respond to Grewal's reliance on *Nicholas* by claiming that *Nicholas's* filing-suit-constitutes-waiver rule does not apply to this case because *Nicholas's* state-law claims were wholly preempted by federal law. (*Id.* at ¶ 3) (citing *Nicholas*, 565 F.3d at 906–08.) As a result, according to Plaintiff/Counter-Defendants, the Court used a different analysis than it would have had the claims been solely based on Texas law, as they are here. (*Id.*) Plaintiff/Counter-Defendants argue that even if *Nicholas* applied, an exception would exist in this case because the original suit was a complaint for declaratory judgment only. (*Id.* at ¶ 4.)

Although Grewal correctly argues that the Fifth Circuit has stated that absent an

exception, filing a claim without asserting an arbitration clause invokes the judicial process, the Texas Supreme Court has stated otherwise, holding that filing suit does not, by itself, waive arbitration. *Compare Nicholas*, 565 F.3d at 908, *with Perry Homes*, 258 S.W.3d at 590. Nevertheless, even under Texas law, this is a factor to consider when viewing the totality of the circumstances. *Perry Homes*, 258 S.W.3d at 592. Accordingly, the Court notes that the fact that Plaintiff/Counter-Defendants initially filed suit weighs in favor of finding that they invoked the judicial process.

### ii. Delay

Next, Grewal argues that Plaintiff/Counter-Defendants' length of and reason for delay in requesting arbitration are factors to be weighed. (Doc. 25 at ¶ 25.) Grewal contends that arbitration could have been sought in November 2014, when he filed his lawsuit against Plaintiff/Counter-Defendants, or at the latest, January 2015, when the cases were consolidated. (Doc. 25 at ¶ 26.) Plaintiff/Counter-Defendants fail to coherently respond to this allegation and merely claim that Grewal's claims are more than five-years old. (Doc. 27 at ¶ 7.)

The amount of time movants wait to seek arbitration and the reason for such delay are both factors the Texas Supreme Court considers as relevant to the totality of the circumstances. *E.g.*, *G.T. Leach Builders*, 458 S.W.3d at 512. The reason for delay is a "key factor" to be considered in the totality of the circumstances. *Richmont Holdings*, 455 S.W.3d at 575. Plaintiff/Counter-Defendants' argument that they filed suit rather than seeking arbitration because they were unaware of Grewal's whereabouts is unpersuasive and fails to explain their delay in seeking arbitration after learning of Grewal's location. According to the AAA rules, service of process to initiate arbitration can be fulfilled by serving the party by mail addressed to that party or their representative at the last known address. (Doc. 25-13.) Here, Plaintiff/Counter-

Defendants were in contact with Grewal's attorney while litigating a similar dispute from 2011 through 2015 and could have provided service through Grewal's attorney. (Docs. 25-7–10.) Even if S. Gill's explanation that he did not believe Mr. Singhal could be properly served is credible, he appears to have had no desire to locate Grewal. S. Gill presents no explanation for failing to ask Mr. Singhal for Grewal's location. Because Plaintiff/Counter-Defendants provide no reasonable explanation for waiting twelve months after consolidation of the cases to compel arbitration, the Court finds that both the length of and reason for delay weigh in favor of concluding they invoked the judicial process.

### iii. Awareness

Grewal argues that Plaintiff/Counter-Defendants were aware of the arbitration clause from the beginning and cannot now claim ignorance as a reason for their delay. (Doc. 25 at ¶ 28.) Whether or not movants were aware of the arbitration clause is another important factor in the Texas Supreme Court's totality-of-the-circumstances test. *E.g., G.T. Leach Builders*, 458 S.W.3d at 512. In this case, because the employment agreement was drafted by S. Gill and the arbitration clause was brought up during Grewal's deposition in September 2015, the Court is persuaded that Plaintiff/Counter-Defendants were aware of the arbitration agreement as early as when they filed suit, and at the latest, four months before they filed their Motion, when they deposed Grewal. (Doc. 25-4 at 104:14–105:08.) Once again, this factor weighs in favor of a finding of invocation of the judicial process.

### iv. Discovery

Another factor that Grewal relies on in demonstrating waiver is discovery. (*Id.* at ¶ 29.) Grewal argues that Plaintiff/Counter-Defendants conducted full discovery related to the merits prior to attempting to compel arbitration. (*Id.* at ¶ 30.) Grewal states discovery was completed

because, despite admitting to working diligently, Plaintiff/Counter-Defendants did not conduct further discovery after an extension of the discovery deadline. (*Id.* at ¶¶ 30–31.) Plaintiff/Counter-Defendants claim to have conducted discovery beyond the scope of arbitration only because anything less would subject them to malpractice if the employment agreement does not dispose of the case in its entirety. (Doc. 27 at ¶ 8.)

Both the amount of discovery conducted and whether or not the discovery relates to the merits are relevant factors to consider when viewing the totality of the circumstances. *E.g.*, *G.T. Leach Builders*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 592. Here, Plaintiff/Counter-Defendants have deposed Grewal on issues beyond the arbitration clause and have sought requests for admissions, interrogatories, and requests for production, which have been responded to. (Docs. 25-2–3, 5–6.) Moreover, these discovery requests are related to the merits and do not seek to merely prove that Grewal was aware of an arbitration clause. (Doc. 25-3.) Plaintiff/Counter-Defendants' argument that they needed to conduct comprehensive discovery to avoid allegations of malpractice is unpersuasive. If Plaintiff/Counter-Defendants had sought arbitration from the start, believing the contractual dispute would resolve all claims, and conducted discovery only to prove that Grewal was aware of the arbitration clause, discovery into the merits would have been unnecessary. Accordingly, this factor also weighs in favor of finding that Plaintiff/Counter-Defendants invoked the judicial process.

### v. Imminence of Trial

Lastly, Grewal argues that Plaintiff/Counter-Defendants waited until trial was imminent before seeking to compel arbitration (*Id.* at ¶ 34.) Another factor that weights in favor of finding that the judicial process was substantially invoked is when the case was set for trial. *E.g.*, *G.T. Leach Builders*, 458 S.W.3d at 512. Waiting until the eve of trial supports a finding of waiver.

*E.g.*, *In re Fleetwood Homes*, 257 S.W.3d at 693. "The rule that one cannot wait until 'the eve of trial' to request arbitration is not limited to the evening before trial; it is a rule of proportion . . ." *Perry Homes*, 258 S.W. 3d at 596 (quoting *In re Vesta*, 192 S.W.3d 759, 764 (Tex. 2006)).

Plaintiff/Counter-Defendants have offered no explanation for waiting until just two months before trial was set to compel arbitration. In fact, Plaintiff/Counter-Defendants previously agreed to an extended discovery deadline, but not a trial extension, thereby continuing the impression that trial would occur in March. (Doc. 25-2.) Considering Plaintiff/Counter-Defendants have conducted discovery into the merits, received a discovery extension, waited until less than two months before trial before filing their Motion, and given no explanation for doing so, this factor also weighs in favor of finding that Plaintiff/Counter-Defendants invoked the judicial process.

Grewal correctly asserts that Plaintiff/Counter-Defendants have initially chosen to litigate as opposed to arbitrate, inadequately justified their delay in seeking arbitration, were aware of the arbitration agreement, conducted full discovery into the merits prior to compelling arbitration, and delayed until the eve of trial. While these factors on their own have been insufficient in the past to satisfy the totality-of-the-circumstances test, given the specific combination of factors presented, the Court concludes that Plaintiff/Counter-Defendants have substantially invoked the judicial process.

### B. Whether Grewal was Prejudiced

A detriment or prejudice to a party occurs when the opposing party's "attempt to have it both ways by switching between litigation and arbitration to its own advantage" causes inherent unfairness. *E.g.*, *Perry Homes*, 258 S.W.3d at 597. Prejudice occurs when there is inherent unfairness in regards to delay, expense, or damage to one's legal position that occurs when a

party's opposition forces litigation on an issue and then later seeks arbitration on the same issue. *Id.* (citation omitted).

The Supreme Court of Texas discussed the issue of prejudice, in regards to waiver of an arbitration clause, in *Perry Homes*. *Id.* at 594–95. *Perry Homes* involved a lawsuit over structural and drainage damage to a home the Culls purchased from Perry Homes. *Id.* at 584–85. The warranty included an arbitration agreement and Perry Homes requested arbitration at the outset of the lawsuit. *Id.* at 585. The Culls adamantly opposed arbitration and began extensive discovery. *Id.* After the Culls completed most of their discovery and the case was set for trial, they decided that they wanted to arbitrate the case and sought arbitration under the same arbitration clause they originally opposed. *Id.* The Supreme Court of Texas found the Culls conduct prejudiced Perry Homes. *Id.* at 597. The court concluded that resisting arbitration then insisting on arbitration; getting extensive discovery under the rules of litigation and then seeking arbitration under another set of rules; delaying disposition when trial is imminent and arbitration is not; and having the court order discovery then limiting Perry Homes' appellate review by invocation of arbitration was unquestionably prejudicial. *Id.*

Grewal contends that he has been prejudiced because allowing arbitration now would allow Plaintiff/Counter-Defendants to have conducted discovery under one set of rules and then require arbitration under another. (Doc. 25 at ¶ 38.) Grewal claims he was also prejudiced by switching from litigation to arbitration on the eve of trial. (*Id.*) Grewal argues that the prejudice here is greater than in *Perry Homes* because he responded to all discovery requests while Plaintiff/Counter-Defendants did not do the same in return. (*Id.* at ¶ 39.) Plaintiff/Counter-Defendants state Grewal has failed to specify what discovery has occurred that would not also have to be produced in arbitration. (Doc. 27 at ¶ 10.) Plaintiff/Counter-Defendants also deny the

allegation that they have failed to provide necessary discovery in return. (*Id.*)

With regard to Grewal's argument that he has satisfied discovery requests but not received the same privilege, this dispute has been settled. Plaintiff/Counter-Defendants have been ordered by this Court to produce certain documents that had previously been withheld. (Doc. 33 ¶ 1.) Grewal has at this time received equal opportunity to conduct discovery.

Plaintiff/Counter-Defendants' arguments that arbitration would have required Grewal to provide the same discovery is irrelevant to the prejudice analysis. *Perry Homes*, 258 S.W.3d at 593. The fact of the matter is Plaintiff/Counter-Defendants sought complete discovery under the rules of litigation and then, less than two months before trial, attempted to compel arbitration. Unlike the Culls in *Perry Homes*, Plaintiff/Counter-Defendants have never argued that the case should not be arbitrated, and the court has not ordered discovery for them. Nevertheless, when a party fails to demand arbitration while conducting pre-trial activities that are inconsistent with an intent to arbitrate, the party that later opposes the motion to compel can more easily show that they have in fact been prejudiced. *Perry Homes*, 258 S.W.3d 580 at 600 (citing *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)). Plaintiff/Counter-Defendants have conducted discovery that goes into the merits, beyond whether or not an arbitration clause exists, all while maintaining the position that the arbitrable claim is dispositive of all claims. Although Plaintiff/Counter-Defendants did not oppose arbitration from the beginning, they did conduct substantial discovery into the merits and waited until less than two months before trial before seeking to compel arbitration.

In sum, the Court concludes that Plaintiff/Counter-Defendants have substantially invoked the judicial process to the prejudice of Grewal. The Court need not consider whether the remaining claims should be abated.

### C. Whether Grewal is entitled to Attorney Fees

Grewal seeks attorney's fees, costs, and other relief. (Doc. 25 at ¶ 30.) Grewal has failed to cite any legal authority that justifies such an award for merely responding to a motion to abate and compel arbitration. Nor did Plaintiff/Counter-Defendants file a frivolous motion entitling Grewal to fees. Grewal's request is, therefore, denied.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff/Counter-Defendants' Motion to Abate and Compel Arbitration, (Doc. 24) is **DENIED**.

SIGNED at Houston, Texas, this 15th day of August, 2016.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE