United States District Court
Southern District of Texas
**ENTERED**
June 15, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JASWANT SINGH GILL, *et al*, | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| VS. | § | CIVIL ACTION NO. 4:14-CV-2502 |
| | § | |
| JAGMOHAN SINGH GREWAL, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

## ORDER

Plaintiffs/Counter-Defendants Jaswant Singh Gill ("J. Gill"), Shaun Singh Gill ("S. Gill"), and Jaswant Singh Gill and Balbindar Gill, LLC ("JGBG") (collectively, "the Gills"), filed a motion for summary judgment. (Doc. No. 97). Counter-Plaintiff/Defendant Jagmohan Singh Grewal ("Grewal") cross-filed a motion for partial summary judgment. (Doc. No. 98). Each party has responded. (Doc. Nos. 103 & 107). Grewal also filed a reply, (Doc. No. 107), and the Gills filed a sur-reply. (Doc. No. 114). Counter-Defendants CyMed Management Associates LLC and CyMed Tomball P.A. (collectively, "CyMed") also filed a motion for summary judgment, (Doc. No. 116), to which Grewal responded. (Doc. No. 123).

### I.    Background

This suit arises out of a failed business venture between Jaswant Singh Gill, Shaun Singh Gill, and Jagmohan Singh Grewal. J. Gill and Grewal attended college together in the late 1960s. After falling out of touch with each other for over thirty years, the two reconnected at a wedding in September 2010. The day after the wedding, Grewal pitched J. Gill an entrepreneurial venture related to the healthcare industry. In essence, the proposed company would provide phone consultations to patients located in the United States by doctors based in India. After some back and forth, including the revocation of an initial agreement after J. Gill learned that Grewal had

previously been convicted for making false statements in connection with a scheme to defraud Medicare, the parties agreed to launch a company—Healthema, LLC ("Healthema").

The parties formed Healthema in October 2010.  On November 20, 2010, Healthema's Operating Agreement was executed.  Pursuant to the Operating Agreement, Grewal and JGBG—an LLC owned by J. Gill—would serve as members of the LLC.  (Doc. No. 98-1 at 6).  The Operating Agreement stated that the members would make initial capital contributions to the business and that "[t]he agreed value of such property and cash is $1,000,000.00 (ONE MILLION DOLLARS)."  *Id.* at 2 (Operating Agreement art. 2.1).  The Operating Agreement also stipulated that over time JGBG would make $1 million worth of "Capital Contributions."  *See* (Doc. No. 98-1 at 7).  Under the Operating Agreement, the parties held the following titles:  J. Gill was the Chairman; J. Gill's son, S. Gill, was the Chief Executive Manager; and Grewal was the Strategic Advisor to the Chairman.  *See id.* at 5.  The Operating Agreement was signed in each party's capacity as either a member or manager of the LLC.  *See id.* at 5.

The same day, the parties signed the Organizational Resolutions of the Managers of Healthema, LLC (the "Organizational Resolutions").  (Doc. No. 97-6 at 16–18).  Under the Organizational Resolutions, the LLC ownership was divided into seventy percent and thirty percent interests to JGBG and Grewal, respectively.  *Id.* at 16–17.  JGBG's ownership stake was in exchange for a staggered $1 million capital contribution,[1] while Grewal's stake was in exchange for his goodwill and intellectual property.  *Id.* at 17.  The Organizational Resolutions also contemplated eventually increasing Grewal's "equity position" and decreasing JGBG's "equity position" once the company achieved profitability.  *Id.*  Finally, the Organizational Resolutions adopted as acts of the company any prior actions taken by the managers that were within the

---

[1] JGBG agreed to provide $100,000 on November 1, 2010, an additional $400,000 on December 1, 2010, an additional $300,000 on January 1, 2011, and a final $200,000 on the first full day of operations.  (Doc. No. 97-6 at 29).

authority conferred.   (Doc. No. 97-6 at 21).   On November 20, 2010, the Organizational Resolutions were signed by J. Gill, S. Gill, and Grewal in their capacity as managers of Healthema.

J. Gill and Grewal signed a one-page Addendum 1 to the Operating Agreement (the "Addendum") on November 21, 2010.   *See* (Doc. No. 98-2).   Under the Addendum, they reaffirmed that Grewal's initial equity position would be thirty percent, but they agreed that his interest would increase after the company achieved profitability.   *Id.*   It was also agreed that "during the pre-operational phase and the first three years of operations, Jagmohan Singh Grewal will have the primary responsibility and authority for making operational decisions with advice from both Jaswant Singh Gill and Shaun Singh Gill."   *Id.*   Finally, J. Gill and Grewal agreed that, to the extent any conflict existed between the Addendum and the Operating Agreement, the Addendum would prevail.   *Id.*   The Addendum was signed by Grewal in his individual capacity and by J. Gill either in his individual capacity or on behalf of JGBG.

Grewal and Healthema also entered into an employment contract (the "Employment Agreement").   Under the terms of the Employment Agreement, signed on November 1, 2010, Healthema hired Grewal as a strategic advisor.   The contract was payable to a third-party corporation, Amind Corporation, which has not been involved in this suit.   The Employment Agreement explicitly states that it was between Healthema and Grewal/Amind Corporation.   *See* (Doc. No. 97-6 at 32).

The dispute between the parties began when Healthema started taking steps towards becoming operational.   Along the way, the parties encountered various organizational issues, including the fact that Indian doctors could not prescribe medications to patients in the United States.   Additionally, to gain access to permits in "Special Economic Zones" ("SEZs") in India, Grewal formed Healthema India Private Limited ("HIPL"), an India corporation.   Grewal was in

India and incurring expenses on behalf of Healthema as the preparation progressed. Many of the expenses incurred were paid for by the cash contributions JGBG had made to Healthema. The parties dispute whether all these preparations were necessary or adequately performed. Grewal contended that to receive the necessary approval, Healthema would need $750,000 of its funds to be transferred to HIPL's accounts. The Gills objected to this request because, in creating HIPL, Grewal gave himself more managerial capacity than he would have had under the Healthema Operating Agreement. According to the Gills, Grewal had sole access to the HIPL bank account. Further, the Gills expressed concern that this $750,000 requirement could not be found in the checklist provided by the consultant Grewal hired to help receive the SEZ permits. Since all of these funds were provided by JGBG, the Gills were concerned about transferring these funds to bank account in a foreign country that was controlled solely by Grewal. Eventually, the Gills refused to transfer the money, and Grewal argues this set the business back in obtaining the permits.

Grewal contends that the Gills then attempted to re-negotiate the terms of their agreement. The Gills acknowledge that they sought an additional memorandum of understanding ("MOU") to "formalize the relationship between . . . HIPL and Healthema." (Doc. No. 97 at 11). The Gills sent a draft of the MOU to Grewal on January 19, 2011. Under the terms of the MOU, certain expenditures required approval by J. Gill or S. Gill or both. *See* (Doc. No. 97-7 at 29).

The next day, S. Gill sent an email to Grewal threatening to cancel their contractual relationship if Grewal did not sign the new MOU. *See* (Doc. No. 98-13). Grewal responded on January 21, stating that he would seek alternative funding and that he would return the funds to the Gills. *See* (Doc. No. 97-7 at 35). In the same email, Grewal stated that J. Gill could "have [S.

Gill] dissolve Healthema, LLC and Doc Call Live, LLC."[2]  *Id.*  In an email the next day, Grewal stated that "I have decided to run this business on my own by bringing in other investor(s) in a way as I originally intended." (Doc. No. 97-7 at 42).

In response to Grewal's decision to go a different direction, S. Gill, acting on behalf of Healthema, sent a letter to Grewal terminating his employment agreement. *See* (Doc. No. 97-7 at 45).  After this exchange, Grewal alleges that from January 24, 2011 to the end of the month, the Gills withdrew a total of $697,149.74 from Healthema's funds.[3]  HIPL's SEZ approval was denied for lack of funding, and Grewal contends that he was required to pay HIPL's employees out of pocket.

Litigation ensued in India relating to payment for a single invoice under the Employment Agreement and the return of a deposit for the business lease.  That litigation ended by 2013, when the Court in India enjoined HIPL from disposing of any assets and ordered the deposit be returned to Healthema.  Subsequently, Grewal sent a demand letter to the Gills demanding payment of his capital contribution, which Grewal argued was "the value of his 30% equity stake in Healthema." (Doc. No. 97-1 at 3).  Grewal also demanded thirty-eight months' worth of salary paid pursuant to the Employment Agreement. *Id.*  This litigation ensued.

## II.    Preliminary Issues

To provide further background, this case began as two separate lawsuits—this action filed by the Gills seeking a declaratory judgment and a second action filed by Grewal alleging various damages claims. *See Grewal v. Gill*, Case No. 4:14-cv-3223.  Both were originally filed in federal court in Houston, and both were based upon diversity jurisdiction.  The Court consolidated the two

---

[2] Doc Call Live was the name Grewal provided to his business plan.
[3] Prior to this time, J. Gill (via JGBG) had placed $800,000 in cash into Healthema.  It represented 100% of Healthema's cash. The amount that was withdrawn represents what was left from these original contributions minus the amounts Grewal (and perhaps others) had already expended to try to set up this venture.

cases into this cause number (4:14-cv-2502), resulting in an alignment that left the Gills as plaintiffs and in which Grewal was a defendant who subsequently became a counter-plaintiff. (Doc. No. 7). After the consolidation into the lower number cause, Grewal filed a counterclaim in this case which mirrored the complaint in the action he previously filed. (Doc. No. 10).

The case progressed, albeit slowly. When it was reassigned to this Court, the undersigned, pursuant to its "independent duty to ascertain whether subject matter jurisdiction exist[ed]" issued an order requiring each side to submit briefing stating the citizenship of the two limited liability companies involved in the suit at that time—Healthema, LLC and Doc Call Live, LLC. (Doc. No. 72 at 1). The parties submitted the required information. (Doc. Nos. 74 & 75). The Court noted, among an array of problems, that Grewal was a member of the LLC that he was suing and vice versa. Under those circumstances, diversity jurisdiction could not be maintained. Nevertheless, the Court did not immediately dismiss the case for lack of jurisdiction. Instead, primarily due to the age of the case, the Court allowed the parties to submit further briefing addressing the analysis which questioned jurisdiction. (Doc. No. 76). The parties filed briefs that in essence confirmed the jurisdictional problem. (Doc. Nos. 77 & 78). Consequently, the Court dismissed the case without prejudice for lack of subject matter jurisdiction. (Doc. No. 79).

Instead of refiling their dispute in a Texas state court that would have general jurisdiction and would not be limited by the confines of federal diversity jurisdiction, the parties opted to pursue their claims here. Both sides agreed to dismiss all of the diversity-spoiling parties and sought reinstatement. (Doc. No. 89) (providing a discussion of the history of the case). Pursuant to their mutual agreement, the Court granted reinstatement and dismissed the two LLCs, Healthema and Doc Call Live, as parties to the suit. *Id.* at 8. The parties then submitted amended complaints removing Healthema and Doc Call Live as parties—nominally or otherwise. (Doc.

Nos. 90 & 91). The resulting situation is that both sides are seeking affirmative relief from the other, while denying the other's claims.

Subsequently, all parties filed cross motions for summary judgment—claiming the right to have a judgment entered in their favor as a matter of law. In its review of these cross motions, the Court became concerned once again about the status, or lack thereof, of the individuals and entities involved. At this stage, the Court was not necessarily concerned about jurisdiction. Instead, it was and still is concerned about whether this Court can provide any of the requested relief given the absence of those now-dismissed parties.

The Court, as a means to focus the parties on this general problem and on the more troublesome specific questions, issued yet another show cause order asking the parties to respond to the multiple legal problems that still plague this matter. (Doc. No. 127). All parties timely responded, (Doc. Nos. 128, 129, 130, 131, and 134), and all assured the Court that they saw no obstacles that would prevent the Court from proceeding to judgment in their favor, and secondarily, even if such an obstacle existed that they were willing for this Court to deal with it by ruling on their various dispositive motions. That being the case, the Court hereby proceeds to address the pending motions for summary judgment.

## III.    Whether Grewal May Bring Claims on Healthema's Behalf

A major part of the current briefing focuses on whether Grewal has abandoned all causes of action that he claims are being brought derivatively on behalf of Healthema. The Gills argue that Grewal dropped his derivative pleadings over five years ago, and thus has abandoned these claims. (Doc. No. 130). Grewal argues that under Texas Business Organizations Code § 101.463(c) he is entitled to bring a derivative action as a direct action. The Gills respond that while § 101.463(c) permits a court to treat a derivative action as a direct action for recovery

purposes, this does not transform the derivative action into a direct action, and therefore, the suit must still be brought on behalf of the LLC. Moreover, the Gills argue that this statute does not exempt Grewal from the pleading requirements that govern this case. According to the Gills, because Grewal's pleadings "abandoned the derivative claim for harm to Healthema," Grewal is left with "only a claim . . . for direct independent injury to Grewal." (Doc. No. 130).

This Court sitting in diversity must apply Texas substantive law. For context, Texas law holds that "a member of a limited liability company lacks standing to assert claims individually when the cause of action belongs to the company." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360 (Tex. App.—Houston [14th Dist.] 2016, writ denied). Nevertheless, self-interest may disincentivize directors and managers of businesses from seeking to vindicate all rights belonging to a company. This lack of interest can cause harm to non-managing members/shareholders. For this reason, some states, including Texas, have adopted statutes permitting those with ownership interests in certain business associations to bring derivative actions to "afford a means by which [those owners who are] powerless to bring a direct civil action at law against faithless directors and managers, may seek to vindicate corporate rights that the corporation itself has refused to enforce." *Schilling v. Belcher*, 582 F.2d 995, 1001 (5th Cir. 1978). Despite this procedural mechanism, the cause of action remains vested in the company. *See In re Black Elk Energy Offshore Operations, LLC*, No. 15-34287 2016 WL 4055044, at *2–8 (Bankr. S.D. Tex. July 26, 2016) (derivative action is an asset belonging to the debtor LLC); *see also* TEX. BUS. ORGS. CODE § 101.451(1) ("'Derivative proceeding' means a civil suit in the right of a domestic limited liability company . . . .").

Grewal argues that he is permitted to bring an action that may be considered derivative as a direct action pursuant to Texas Business Organizations Code § 101.463(c). Under that provision, if justice so requires:

> (1) a derivative proceeding brought by a member of a closely held limited liability company[4] may be treated by a court as a direct action brought by the member for the member's own benefit; and
>
> (2) a recovery in a direct or derivative proceeding by a member may be paid directly to the plaintiff or to the limited liability company if necessary to protect the interests of creditors or other members of the limited liability company.

TEX. BUS. ORGS. CODE § 101.463(c). Grewal's argument misunderstands the role this provision plays in the context of shareholder derivative suits. The Supreme Court of Texas has found, in the context of the similarly worded provision relating to closely held corporations, that this provision does not provide "an absolute right for a shareholder to recover directly for claims based on corporate injuries." *Sneed v. Webre*, 465 S.W.3d 169, 188 (Tex. 2015). "Rather, if justice requires, a court may treat a derivative proceeding like a direct action and allow the shareholder to recover directly." *Id.* Even then, "the proceeding must be derivative." *Id.* "A trial court's decision to treat an action as a direct action . . . so as to allow recovery to be paid directly to a shareholder plaintiff, as opposed to the corporation, does not mean that the action is no longer a derivative proceeding." *Swank v. Cunningham*, 258 S.W.3d 647, 665 (Tex. App.—Eastland 2008, pet. denied) (emphasis added). Therefore, even if justice required that the Court allow Grewal to pursue causes of action which belong to the company as a direct action belonging to him, he is still required to bring this suit as a derivative action. He is not. A tracing of Grewal's pleadings proves this point.

---

[4] Neither party disputes that Healthema is a closely held limited liability company.

In Grewal's Original Complaint, Grewal brought the action, at least in part, as a derivative action.[5]   The caption in that pleading literally read "JAGMOHAN SINGH GREWAL, INDIVIDUALLY AND ON BEHALF OF HEALTHEMA, LLC." (Case No. 4:14-cv-3223, Doc. No. 1 at 1).   The Original Complaint in cause number 4:14-cv-3223 made the following reference to Healthema:

> Plaintiff Healthema, LLC, ("Healthema") is a limited liability company organized and existing under Texas law with its principal place of business in Texas.  Grewal has standing to maintain this action on behalf of Healthema in that it is a closely held corporation under Texas. Bus. Corp. Act and Grewal is and was a member of Healthema at the time of the actions and omissions made the basis of this suit and fairly and adequately represents the interests of the corporation in enforcing the rights of the corporation.

*Id.* at 1–2.   The Original Complaint also stated that "[u]nder applicable law, Healthema is a nominal defendant." *Id.* at 2.   For whatever reason,[6] three days later Grewal amended his complaint.   The Amended Original Complaint in cause number 4:14-cv-3223 removed the phrase "INDIVIDUALLY AND ON BEHALF OF HEALTHEMA, LLC" from the caption and removed the paragraph referring to Healthema as a Plaintiff and the reference to Grewal's standing to maintain the action on behalf of Healthema.   (Case No. 4:14-cv-3223, Doc. No. 3 at 1).   The Amended Original Complaint maintained that "Healthema is a nominal defendant," and contained allegations against Healthema directly, but all references to a claim being brought by it or on its behalf were deleted.   *Id.*   After consolidation, Grewal also filed an Original Counterclaim in case number 4:14-cv-2502, which was a near carbon copy of the Amended Original Complaint filed in

---

[5] Grewal was the plaintiff in his original action which was docketed as Case No. 4:14-cv-3223.  As stated above, the Court consolidated the two cases into the lower cause number under the caption above in which Grewal is technically the defendant and now a counter-plaintiff. (Doc. No. 7).

[6] Perhaps Grewal did this because he realized that the presence of Healthema as a plaintiff and/or a defendant would destroy diversity jurisdiction.  The Original Complaint recognized Plaintiff Healthema—a Texas LLC—and the Gill Defendants—one of whom was an LLC member—as Texas residents.  It also recognized Healthema as a nominal defendant.  (Case No. 4:14-cv-3223, Doc. No. 1 at 3).  Clearly, under these pleadings, there was no diversity of citizenship.

cause number 4:14-cv-3223. *See* (Doc. No. 10). The Original Counterclaim did not purport to bring the suit on behalf of Healthema, and again listed Healthema as only a nominal defendant. Later, in response to the jurisdictional issues raised by the Court regarding whether Healthema's citizenship destroyed diversity, as discussed above, Grewal filed his current live pleading, his Second Amended Counterclaim.[7] The Second Amended Counterclaim removes Healthema as a nominal defendant, makes no reference to Texas Business Organization Code § 101.463(c), and fails to suggest in any other way that Grewal is asserting a derivative claim seeking to enforce the rights of Healthema. *See* (Doc. No. 91).

This review of the pleading history demonstrates clearly that Grewal abandoned his derivative claims years ago and that the Second Amended Counterclaim does not allege any derivative claims. Under Texas law, a party must state the capacity in which they are seeking relief. *Cf. Johnson ex rel. MAII Holdings, Inc. v. Jackson Walker, L.L.P.*, 247 S.W.3d 765, 771 (Tex. App.—Dallas 2008, no pet.) (a party who initially filed suit derivatively "on Behalf of" a company and "Individually as a Shareholder" was not individually a party to an appeal where his notice of appeal was only filed for himself "on Behalf of" the company); *see also Elizondo v. Tex. Nat. Res. Conservation Comm'n*, 974 S.W.2d 928, 931 (Tex. App.—Austin 1998, no pet.) ("[A] person in his individual capacity is a stranger to his rights and liabilities as a fiduciary or in a representative capacity.") (quotation and citation omitted). Under this rule, Texas courts have explicitly rejected the exact argument Grewal is making here, i.e. that an owner/member of a closely held company/corporation may file a derivative action as a direct action in their individual capacity. *See Abdu v. Hailu*, No. 05-17-01261-CV, 2018 WL 6716547, at *3 (Tex. App.—Dallas Dec. 21, 2018, no pet.) ("A corporate shareholder lacks standing to sue in her own name or for her

---

[7] Grewal amended his counterclaim one other time. *See* (Doc. No. 21). None of the other amendments have any bearing on whether the suit is direct or derivative.

own benefit on a cause of action belonging to the corporation, even if the shareholder is indirectly injured through injury to the corporation. This applies to closely held corporations and to sole shareholders.") (citation omitted); *see also Mossler v. Nouri*, No. 03-08-00476-CV, 2010 WL 2133940, at *3 (Tex. App.—Austin May 27, 2010, pet. denied) ("[W]hile they each own half of the corporation's stock, the [plaintiffs] do not own the corporation's causes of action, and therefore lack the justiciable interest in those causes of action necessary to confer standing to pursue them in their individual capacities."). The Second Amended Counterclaim does not provide any indication that Grewal is suing on behalf of Healthema. Clearly, this compels a finding that he is suing individually.

More importantly, Grewal's pleadings are insufficient under federal law. Federal pleading standards[8] are heightened in the context of derivative suits, and Grewal has not made any effort to comply with these standards. Federal Rule of Civil Procedure 23.1 provides for certain minimum pleading standards "when one or more shareholders or members of a corporation or an unincorporated association bring a derivative action to enforce a right that the corporation or association may properly assert but has failed to enforce." Under the rule, among other things, the complaint must: (1) be verified, (2) "allege that the action is not a collusive one to confer jurisdiction that the court would otherwise lack," and (3) "state with particularity . . . the effort by the plaintiff to obtain the desired action from the directors or comparable authority." FED. R. CIV. P. 23.1. Grewal's Second Amended Counterclaim complies with none of these requirements. (Doc. No. 91). Grewal's failure to comply with Rule 23.1 provides further evidence that his action

---

[8] Under the *Erie* doctrine, "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts in Texas have held that pleading standards are procedural law for *Erie* purposes. *See, e.g., Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166-KC, 2011 WL 5976918, at *4 n.2 (W.D. Tex. Nov. 29, 2011); *see also IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 647 (5th Cir. 2018) (applying Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure to Texas fraudulent inducement claims).

is not a derivative one.  Stated another way, if these claims are intended to assert a derivative action, they fail to comply with well-established pleading principles.

Moreover, in all likelihood, Grewal could not bring this suit as a derivative action and maintain diversity jurisdiction, which was his goal when he asked this Court to reinstate this case. As the Supreme Court of Texas has explained, "companies in derivative litigation are simultaneously 'plaintiffs' and 'defendants,' depending on how you look at it." *In re Murrin Bros. 1885, Ltd.*, No. 18-0737, 2019 WL 6971663, at *4 (Tex. Dec. 20, 2019).  Apart from the potential that the LLC, acting simultaneously as a Plaintiff and Defendant, may, itself, defeat diversity, the citizenship of an LLC for diversity purposes is determined by the citizenship of its members. *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008).  Therefore, in any suit in which an LLC sues, or is sued by, one of its members, the LLC will hold the same citizenship as the opposing party, thus defeating diversity jurisdiction. *See, e.g.*, *Atanasio v. O'Neill*, 235 F. Supp. 3d 422, 426 (E.D.N.Y. 2017) (dismissing suit because regardless of the way the derivative suit was aligned, the citizenship of the LLC destroyed complete diversity); *Cook v. Toidze*, 950 F.Supp.2d 386, 390 n.4 (D. Conn. 2013) (concluding, in a derivative suit where LLC members were adverse parties, that "regardless of where [the LLC] is aligned in this suit, there is no diversity"); *Moore v. Simon Enters., Inc.*, 919 F. Supp. 1007, 1009 (N.D. Tex. 1995) (dismissing case for failure to join an indispensable party because derivative claims against partnership would require joining the partnership whose citizenship would defeat diversity).  Here, irrespective of

whether Healthema is a plaintiff suing the Gills, is a defendant[9] being sued by Grewal,[10] vice-versa, or is both, this Court would not have complete diversity.[11]

In the alternative, Grewal argues that he may bring the claims because Healthema is no longer in existence. It is true that in certain circumstances individual shareholders may sue on causes of action that belong to a terminated entity. *See Stephens v. Three Finger Black Shale P'ship*, 580 S.W.3d 687, 707 (Tex. App.—Eastland 2019, pet. filed). That being said, even the cases Grewal cites acknowledge that "the suit must be a derivative one; the shareholder must file it on behalf of the [company], not in his own name." *Id.* As has been discussed, Grewal has not filed this suit on behalf of the company; he has filed it in his own name. Therefore, the fact that Healthema has been dissolved does not provide Grewal with a mechanism to bring claims that belong to Healthema. *See id.*; *see also El T. Mexican Rests., Inc. v. Bacon*, 921 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (finding that because Plaintiff "did not allege that he was suing in a representative capacity on behalf of the corporation for the corporate cause

---

[9] Grewal argues that Healthema would be only a nominal defendant in this lawsuit. It is true that "federal court[s] must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). Nevertheless, the contention that a company is a nominal defendant in a derivative action is unsupported in the case law. *See Cook*, 950 F. Supp. 2d at 390 (noting that, in "a derivative suit, the limited liability company is not a nominal party"); *Khoury v. Oppenheimer*, 540 F. Supp. 737 (D. Del. 1982); *see also Ross v. Bernhard*, 396 U.S. 531, 538 (1970) (finding that in a derivative action "[t]he corporation is a necessary party to the action; without it the case cannot proceed."); *Knop v. Mackall*, 645 F.3d 381, 383 (D.C. Cir. 2011) (Kavanaugh, J.) ("it is undisputed that the corporation in a shareholder derivative suit is indispensable under the joinder rules"); *Gabriel v. Preble*, 396 F.3d 10 (1st Cir. 2005) (considering citizenship of corporate defendant in shareholder derivative suit for purposes of diversity jurisdiction); *Bartfield v. Murphy*, 578 F.Supp.2d 638, 650 (S.D.N.Y. 2008) (concluding that a LLC was a necessary party to "derivative claims raised on its behalf").

[10] Under Supreme Court precedent, "the corporation in a shareholder derivative suit should be aligned as a defendant when the corporation is under the control of officers who are the target of the derivative suit." *Knop*, 645 F.3d at 382 (Kavanaugh, J.) (citing *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 523 (1947)). That appears to be the correct alignment should this suit have been brought derivatively.

[11] As discussed below, some of Grewal's claims as currently pleaded have been filed against the Gills when the proper Defendant was Healthema. *See*, *infra* at 18–19, 23 & 32 (Grewal's breach of contract and conversion claims). As an example, a direct action against Healthema by Grewal would defeat diversity jurisdiction because he is a Californian and—because he is a Healthema member—so is Healthema.

of action, . . . [his] cause of action must fail"). Even if it was dissolved, Grewal still abandoned these derivative claims years ago.[12]

The Court is also not convinced that Healthema is no longer in existence for all purposes. The parties have filed documents filed with the Texas Secretary of State showing that Healthema has been dissolved. This is not the end of the road for a Texas LLC. Under Texas law, "[n]otwithstanding the termination of a domestic filing entity . . . , the terminated filing entity continues in existence until the third anniversary of the effective date of the entity's termination only for purposes of . . . prosecuting or defending in the terminated filing entity's name an action or proceeding brought by or against the terminated entity." TEX. BUS. ORG. CODE § 11.356(a)(1). Healthema was terminated on November 27, 2019, and under Texas law, it remains in existence for the purposes specified in Texas Business Organizations Code § 11.356 until November 27, 2022. *See* (Doc. No. 128-4).

In summary, while Texas law permits parties like Grewal to treat derivative actions like direct actions for recovery purposes, the suit still must be brought as a derivative suit. *See Sneed*, 465 S.W.3d at 188. The Court finds that Grewal has not brought the present action as a derivative action. In fact, in 2014, he purposefully dropped the very claims he now contends that he is trying to assert. Since Grewal has not brought this suit as a derivative action, he is only entitled to recover for harms incurred individually and similarly "lacks standing to assert claims individually when the cause of action belongs to the company." *Siddiqui*, 504 S.W.3d at 360.

## IV.    Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

---

[12] Healthema was not dissolved until November 27, 2019. Therefore, even if Grewal could now bring the claims individually, he did not possess that privilege three months prior at the time he filed his Second Amended Complaint.

56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex,* 477 U.S. at 321-25.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Marusushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## V.   Grewal's Second Amended Counterclaim

### A.  Grewal's Breach of Contract Actions

Grewal's Second Amended Counterclaim alleges that the Gills breached the Governing Documents[13] by:  (1) misappropriating substantially all of Healthema's assets; (2) failing and refusing to distribute to Grewal his alleged share of any liquidating distributions; (3) repudiating the contract and refusing continued performance unless Grewal signed one or more new agreements that would radically alter the terms of their deal; (4) preventing Grewal from exercising primary responsibility and authority for making operational decisions pursuant to the Addendum; (5) excluding Grewal from the management and affairs of Healthema; (6) preventing Grewal from

---

[13] The Governing Documents that form the basis for Grewal's breach of contract claims are (1) the Healthema Operating Agreement (Doc. No. 97-6 at 23–28); (2) the Healthema Organizational Resolutions (Doc. No. 98-3); and (3) the Addendum to the Operating Agreement (Doc. No. 97-6 at 30).

exercising his authority as a manager of Healthema; (7) failing to prudently and properly manage

the company; (8) improperly delegating and/or usurping management powers and responsibilities;

(9) failing and/or refusing to continue and/or allow the continuation of Healthema's business;

(10) dissolving or attempting to dissolve Healthema without notice to Grewal and without the

required vote; (11) expending Healthema's funds for personal benefit and/or outside business

interests; and (12) committing other wrongful acts to usurp or deny Grewal's membership and

management interests in Healthema.   The Gills moved for summary judgment arguing "these

claims are without merit."   (Doc. No. 97 at 24).   As stated earlier, the Court issued an order

requiring the parties to submit briefing to show cause why this case should not be dismissed in

light of, *inter alia*, the fact that:

> Grewal has sued the Counter-Defendants for breach of the operating agreement.
> As a general rule, parties cannot recover directly from defendants on claims such
> as this because the members of an LLC cannot normally be held liable for the debts,
> obligations, or liabilities of an LLC.  *See* TEX. BUS. ORGS. CODE § 101.114; *see
> also Kennebrew v. Harris*, 425 S.W. 3d 588, 600-01 (Tex. App.—Houston [14th
> Dist] 2014, pet. denied) (finding that a member of an LLC cannot be jointly and
> severally liable for the LLC's breach of an operating agreement and other contracts
> into which the LLC entered).

(Doc. No. 127 at 6).  In response to the show cause order, the Gills argued that the breaches of the

Governing Documents fall into two categories, neither of which permit recovery.  First, the Gills

argue that claims (1) and (3) – (11) constitute injury to Healthema, for which Grewal has not sued

derivatively and for which Grewal cannot sue individually.  (Doc. No. 128 at 6–8).  Second, the

Gills argue that while claims (2) and (12) may constitute injury directly to Grewal, that injury was

caused by Healthema, who is no longer a defendant in this case.  *Id.* at 8–9.  Moreover, Healthema

cannot be sued in federal court, at least not by one of its members.  Apart from contending that he

may bring the claims directly under the Texas Business Organizations Code, Grewal did not

respond to this argument.  *See* (Doc. Nos. 129 & 131).

The Court agrees with both propositions of law proffered by the Gills and therefore finds that Grewal cannot recover for any contract claims that resulted in damages to Healthema instead of Grewal individually.  Further, Grewal cannot recover for any contract breach where the injury, if any, was caused by Healthema because it is not a defendant.  The question remaining is whether any or all of the twelve claims fall into one of these two categories.  The Court will take them in order.

1.     The first claim is that the Gills misappropriated all of Healthema's assets.  The Gills argue that this alleged injury was suffered by Healthema, if at all, and cannot be maintained individually by Grewal.   The Court agrees.   Under Texas Business Organizations Code § 101.106(b), "a member of a limited liability company . . . does not have an interest in any specific property of the company."  The assets of Healthema were independently and solely owned by Healthema, and therefore, any injury resulting from the misappropriation of those funds is a harm to the LLC.  Grewal "lacks standing to assert claims individually when the cause of action belongs to the company." *Siddiqui*, 504 S.W.3d at 360.  Therefore, the Court grants summary judgment on Grewal's first breach of contract action as to all parties.[14]

2.     The second allegation is that the Gills "fail[ed] and refus[ed] to distribute to Grewal his share of any liquidating distributions."  (Doc. No. 91 at 10).  The Gills argue that this injury was caused by Healthema, who is no longer a defendant in this suit.  The Court agrees.  The right to distributions in liquidation arises under Article 3.2 of the Operating Agreement. *See* (Doc. No. 97-6 at 24).  The failure to pay a distribution is an action taken officially by the LLC. *Cf.* 18B Am.

---

[14] Moreover, it could certainly be argued that the relevant agreements allow one member whose capital interest exceeds 50% to dissolve the company. *See* (Doc. No. 97-6 at 23) (Operating Agreement art. 1.4(a)).  JGBG had 100% of the capital contributions in Healthema, as could be seen from the exhibits attached to the Operating Agreement. *See* (Doc. No. 97-6 at 29) (listing only JGBG as making "Capital Contributions").  That same contract provides that the assets should be distributed according to each member's "positive capital account balances" which would arguably result in the assets about which Grewal complains being given to Gill. *See* (Doc. No. 97-6 at 24) (Operating Agreement art. 3.2).

Jur. 2d Corporations § 1086 ("A suit in equity for contract dividends on preferred stock is one to control the conduct of the corporate business . . . ."). To the extent the Gills were involved, it was only in their role as agents of the LLC. "Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." *See* TEX. BUS. ORGS. CODE § 101.114. Here, the Operating Agreement states that "[t]he liability of the Members shall be limited as provided under the laws of the Texas Limited Liability statutes." (Doc. No. 97-6 at 24). Therefore, the Gills cannot be held directly[15] liable for Healthema's breach of the Operating Agreement. For that reason, the Court grants summary judgment on Grewal's second breach of contract action as to all parties. *See also Kennebrew v. Harris*, 425 S.W.3d 588, 600–01 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (finding that a member of an LLC cannot be held jointly and severally liable for the LLC's breach of the operating agreement and other contracts the LLC entered into).

3.      Grewal's third breach of contract allegation is that the Gills "repudiat[ed] the contract and refus[ed] continued performance unless Grewal signed one or more new agreements that would radically alter the terms of their deal." (Doc. No. 91 at 10–11). The Gills argued that "the alleged damages caused by these actions were suffered by Healthema, not Grewal." (Doc. No. 128 at 7). Grewal has not put forward any evidence, nor has he explained, how he sustained an injury personal to him as a result of these actions. Any purported failure by the Gills to perform obligations owed to Healthema would only harm Grewal insofar as it diminished the value of his

---

[15] This is not to say that the Gills could not have been held indirectly liable if Grewal's construction of the Operating Agreement was correct. Though not available here specifically because of the lack of pleadings and generally in federal court due to the lack of complete diversity, Grewal could have brought a derivative action on behalf of Healthema arguing that Healthema failed to make this payment because the Gills misappropriated their assets in breach of the fiduciary duty of loyalty owed to Healthema.

ownership stake in Healthema.[16] This is a derivative claim for which Grewal cannot recover in his individual capacity. *See Siddiqui*, 504 S.W.3d at 360. Therefore, the Court grants summary judgment on Grewal's third breach of contract claim as to all parties.

      4.      Grewal's fourth breach of contract claim alleges that the Gills "prevent[ed] Grewal from exercising 'primary responsibility and authority for making operational decisions' pursuant to the Addendum." (Doc. No. 91 at 11). The Gills argue that this was an injury suffered by Healthema, and thus Grewal cannot recover individually on this action. The Court disagrees. Unlike the other contracts, the Addendum to the Operating Agreement was signed by J. Gill and Grewal apparently in their individual capacities, or by J. Gill in his capacity as an agent of JGBG. The agreement was "between Jagmohan Singh Grewal . . . and Jaswant Singh Gill of [JGBG]," listing each party's home address and not providing any indication that the agreement was signed in an official capacity. While it may be true that Healthema ratified or otherwise assumed liability for the contract as the action of its agent (J. Gill or JGBG), Healthema is no longer a party to this suit, and there has been no suggestion that the obligation under the Addendum was transferred to Healthema by adoption, assignment, novation, or otherwise. Therefore, the Court cannot grant summary judgment on Grewal's fourth breach of contract claim as to J. Gill or JGBG. The Court grants summary judgment for S. Gill and the CyMed Entities, none of whom are parties to the Addendum.

      5.      Grewal's fifth and sixth breach of contract claims allege that the Gills "exclud[ed] Grewal from the management and affairs of Healthema" and "prevent[ed] [Grewal] from

---

[16] The Court need not address at this stage the argument that this entire situation was triggered by Grewal's resignation email on January 21, 2019 in which he stated J. Gill could "have [S. Gill] dissolve Healthema, LLC and Doc Call Live, LLC." (Doc. No. 97-7 at 35). This resignation would have arguably triggered the dissolution of the LLC under art. 1.4(c) of the Operating Agreement and the resulting distribution of assets. *See* (Doc. No. 97-6 at 23–24) (arts. 1.4(c) & 3.2 of Operating Agreement).

exercising his authority as a manager of Healthema." (Doc. No. 91 at 11). These two allegations refer to the powers of managers conferred by Article 4 of the Operating Agreement, *see* (Doc. No. 97-6 at 24), and the failure to permit Grewal to exercise those powers. As these two actions are so similar, the Court will consider them together. The Gills argue that the injury from this alleged breach, if any, was suffered by Healthema and therefore, that the action cannot be maintained individually by Grewal. The Court agrees. To the extent Grewal was prevented from exercising management authority over Healthema, this was pursuant to the Operating Agreement which was signed by the parties in their capacity as managers of Healthema. Any potential harm was endured by Healthema as a whole. Grewal's only injury would be derivative of this harm. *See also Kennebrew*, 425 S.W.3d at 600–01 (finding that a member of an LLC cannot be held jointly and severally liable for the LLC's breach of the operating agreement and other contracts the LLC entered into). Alternatively, if Grewal is arguing that this harm relates to his separate employment agreement, the Gills cannot be held liable for these actions because that agreement was between Grewal and Healthema. *See* TEX. BUS. ORGS. CODE § 101.114 (absent agreement to the contrary, a member of an LLC cannot be held liable for the obligations or liability of the LLC). Therefore, the Court grants summary judgment against Grewal on his fifth and sixth breach of contract claims as to all parties.

6.      Grewal's seventh and eighth breach of contract claims allege that the Gills "fail[ed] to prudently and properly manage the company" and "improperly delegat[ed] and/or usurp[ed] management powers and responsibilities." (Doc. No. 91 at 11). These two allegations refer to the powers of managers conferred by Article 4 of the Operating Agreement, *see* (Doc. No. 97-6 at 24), and the failure by the Gills to exercise those powers properly. As these two actions are innately similar, the Court will consider them together. The Gills argue that the injury from this alleged

breach, if any, was suffered by Healthema and therefore, that the action cannot be maintained individually by Grewal. The Court agrees. The only harm that befell Grewal on account of the alleged breach of the Operating Agreement by the Gills was derivative of Grewal's purported ownership stake in Healthema. Grewal cannot bring this action individually. *Siddiqui*, 504 S.W.3d at 360. Therefore, the Court grants summary judgment against Grewal on his seventh and eighth breach of contract claims as to all parties.

7.      Grewal's ninth and tenth breach of contract actions allege that the Gills "fail[ed] and/or refus[ed] to continue and/or allow the continuation of Healthema's business" and "dissolv[ed] or attempt[ed] to dissolve Healthema without notice to Grewal and without the required vote." (Doc. No. 91 at 11). These two allegations refer to the process found in Article 1.4 of the Operating Agreement for terminating Healthema, *see* (Doc. No. 97-6 at 24), and the alleged failure by the Gills to follow that process. The Gills argue that the injuries from these alleged breaches, if any, were suffered by Healthema and therefore, that the action cannot be maintained individually by Grewal. The Court agrees. As has been said before, the harm, if any, caused here is a harm directly to Healthema that Grewal shares in only derivatively and only in proportion to his ownership stake in the company. These claims belong to Healthema, and Grewal cannot maintain them individually. *Siddiqui*, 504 S.W.3d at 360. Therefore, the Court grants summary judgment against Grewal on his ninth and tenth breach of contract claims as to all parties.

8.      Grewal's eleventh breach of contract claim alleges that the Gills "expend[ed] Healthema's funds for personal benefit and/or outside business interests." (Doc. No. 91 at 11). The Gills argue that the injuries from these alleged breaches, if any, were suffered by Healthema and therefore, that the action cannot be maintained individually by Grewal. The Court agrees. "A member of a limited liability company . . . does not have an interest in any specific property of the

company." TEX. BUS. ORGS. CODE § 101.106(b).  Therefore, the funds that Grewal alleges were improperly expended by the Gills belonged exclusively to Healthema.  Any action to recover those funds belongs to Healthema, and Grewal cannot bring that claim individually.  *Siddiqui*, 504 S.W.3d at 360.  For that reason, the Court grants summary judgment against Grewal on his eleventh breach of contract action as to all parties.

9.      Finally, Grewal's twelfth breach of contract action alleges that the Gills "commit[ed] other wrongful acts to usurp or deny Grewal's membership and management interests in Healthema."  (Doc. No. 91 at 11).  The Gills argue that the injury, if any, was caused by Healthema, who is no longer a defendant in this case.  After cross-motions for summary judgment, responses and replies to those cross-motions, show-cause briefing, and responses and replies to the show-cause briefing, Grewal has not identified which "other wrongful acts" he contends form the basis of this breach of contract action.  Regardless, acts to usurp or deny these interests must arise under either the Operating Agreement or the Organizational Resolutions which confer the rights attendant to membership and management interests in Healthema.  *See* (Doc. Nos. 97-6 at 23–26 & 98-3).  In both cases, Grewal is arguing either that the Gills have breached the duties they owe to Healthema, causing a derivative harm, or that Healthema, acting through its agents, harmed Grewal.  If it is the former, the action is derivative, and Grewal does not have standing to maintain the action individually. *Siddiqui*, 504 S.W.3d at 360.  If it is the latter, the action is against Healthema, who is no longer a party to this suit.  Therefore, the Court grants summary judgment against Grewal on his twelfth breach of contract action as to all parties.

CyMed moved for summary judgment separately on all of Grewal's contract claims arguing that they were not in existence at the time of the breaches of contract.  In order to establish standing to maintain a breach of contract action, a plaintiff must show either third-party beneficiary

status or privity. *OAIC Commercial Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 738 (Tex. App.—Dallas 2007, pet. denied). Grewal did not show either of these things as to CyMed, nor could he considering CyMed did not exist at the time the contract was formed. Therefore, the Court grants summary judgment for CyMed on all of Grewal's breach of contract claims.

Alternative reasons also support granting summary judgment in favor of CyMed and S. Gill. The Court granted summary judgment against Grewal on most of his breach of contract claims because he does not have standing under Texas law to bring those claims. The remaining claims that the Court granted summary judgment on found Grewal did not sue the proper defendant—Healthema. The same reasons preclude recovery against CyMed and S. Gill. Therefore, along with CyMed, the Court also grants summary judgment against Grewal for his contract claims against S. Gill. The only claim that remains is a claim that J. Gill/JGBG individually breached their agreement with Grewal.

In summary, the Court has found that Grewal individually can only maintain one of his pleaded breach of contract actions. Therefore, the Court will only proceed to trial on Grewal's third breach of contract claim which alleges that J. Gill or JGBG prevented Grewal from exercising primary managerial responsibility as provided for in the Addendum to the Operating Agreement.

### B. Grewal's Breach of Fiduciary Duty Claims

Grewal's Second Amended Counterclaim alleges an action for breach of fiduciary duty. (Doc. No. 91 at 12). In Texas, a plaintiff, in order to maintain a breach of fiduciary duty claim, must establish the following elements: "(1) a fiduciary relationship existed between the plaintiff and defendant; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant." *O'Hern v. Mughrabi*, 579 S.W.3d 594, 604 (Tex. App.—Houston [14th Dist.] 2019, no pet.). The Gills moved for

summary judgment on this claim, arguing that: (1) no fiduciary relationship existed; (2) even if there was a fiduciary relationship, there was no breach of any fiduciary duty; and (3) Grewal has not suffered any injury that was proximately caused by the alleged breach of fiduciary duty. (Doc. No. 97 at 28–31). Grewal responded to each of these arguments.

In addressing whether a fiduciary relationship existed, the Court finds it is necessary to clarify the scope of the fiduciary duty claim alleged in Grewal's Second Amended Counterclaim. In this case's infancy, Grewal alleged that the Gills owed him a "strict fiduciary duty by virtue of [their] management of the company." *See* (Doc. No. 10 at 7 & 8). The Second Amended Counterclaim deletes this language and instead alleges that "[a] fiduciary relationship existed between Counter-Defendants and Grewal, by virtue of the close personal relationship between Grewal and J. Gill, the high degree of trust, influence, and confidence acquired over the course of their relationship, and/ or Counter-Defendants' roles as co-members, managers, officers, and/ or legal counsel of Healthema." (Doc. No. 91 at 12). In responding to the Gills' motion for summary judgment, Grewal argued that the Gills "owed formal fiduciary duties to . . . Healthema as its managers." (Doc. No. 103 at 23). In its show cause order, the Court questioned whether Grewal could recover on the claim because it appeared that the "fiduciary duty, if any, is owed to the LLC (here, Healthema)." (Doc. No. 127 at 2). In response to this order, Grewal clarified that "his fiduciary duty claims are not based on some kind of statutory fiduciary duty existing because of Healthema LLC, but rather an informal fiduciary duty that existed because of the long-term personal relationship between Grewal and [J.] Gill, who had been college roommates years before." (Doc. No. 129 at 5). There is no probative evidence of any preexisting relationship with S. Gill and consequently, the Court grants his motion on any claim based upon fiduciary duty.

Therefore, the remaining question is whether an informal fiduciary duty existed between the Grewal and J. Gill.[17]

Apart from formal fiduciary relationships, Texas courts "also recognize an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). That being said, "[i]n order to give full force to contracts, [Texas courts] do not create such a relationship lightly." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 177 (Tex. 1997). "It has long been recognized that not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 365 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citation and quotation omitted). "[I]n the context of a business transaction, to impose an informal fiduciary duty, the special relationship of trust and confidence must exist prior to, and apart from, any agreement made the basis of the suit." *Constr. Fin. Servs., Inc. v. Chi. Title Ins. Co.*, No. 04-12-00375-CV, 2013 WL 1846613, at *5 (Tex. App.— San Antonio, May 1, 2013, no pet.). "Where the underlying facts are undisputed, determination of the existence, and breach, of fiduciary duties are questions of law, exclusively within the province of the court." *Meyer*, 167 S.W.3d at 330.

Here, Grewal contends that he placed "'complete' trust in J. Gill based on their history of close friendship, and this high degree of personal trust was the reason he allowed J. Gill and S. Gill to maintain exclusive control over Healthema's bank account while he was in India." (Doc. No. 103 at 22–23). The extent of the personal relationship between J. Gill and Grewal is summed

---

[17] By Grewal's own admission, "Texas courts have not yet recognized a fiduciary duty among members in a limited liability company as a matter of law." (Doc. No. 103 at 22); *see also Guevara v. Lackner*, 447 S.W.3d 566, 580–81 (Tex. App.—Corpus Christi-Edinburg 2014, no pet.). ("Texas courts have declined to recognize a broad formal fiduciary relationship between majority and minority shareholders in closely held companies that would apply to every transaction."). This may be abridged by agreement in the Operating Agreement. *See* TEX. BUS. ORGS. CODE § 101.401. That is not the case here. *See* (Doc. No. 97-6 at 23–28)

up in the affidavit by Grewal that accompanied his motion for summary judgment.   According to
Grewal:

> [He] met Jaswant Singh Gill at Oklahoma State University in the late 1960s, and
> [they] became close friends. In 1971, Jaswant came to Detroit to stay with [Grewal]
> for a few months. [They] kept in touch, and in 1973, Jaswant and his wife visited
> [Grewal] in Detroit. In 1976, [Grewal] with [his] family visited Jaswant in
> Cleveland, Tennessee. After that, [they] lost contact with each other until [they]
> reconnected in September 2010 at [Grewal's] nephew's wedding in Houston.

(Doc. No. 98-6 at 1).  Summarized, Grewal and J. Gill were college friends who kept in touch for

a few years, then fell out of contact for thirty-five years.  They reconnected at a wedding, and

based upon a number of written contracts, Healthema was launched within two months of the duo

reconnecting.  J. Gill argues that these facts fall well short of creating a fiduciary duty, especially

in light of the Supreme Court of Texas's statement that it "do[es] not create such a relationship

lightly." *See Schlumberger Tech.*, 959 S.W.2d at 177.

The Court agrees.  While we all hope that our old college friends hold us in high regard,

few would expect these long-lost friends to make their interests subservient to our own, much less

following a thirty-five-year break in communication.  Yet "[t]he effect of imposing a fiduciary

duty is to require the fiduciary party to place someone else's interests above its own." *Lindley v.*

*McKnight*, 349 S.W.3d 113, 124 (Tex. App.—Fort Worth 2011, no pet.).  For that reason, the

Supreme Court of Texas has declined to "impos[e] a fiduciary duty based on the fact that, for four

years, [the parties] were friends and frequent dining partners." *Meyer v. Cathey*, 167 S.W.3d 327,

331 (Tex. 2005);  *see also Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d

591, 594 (Tex. 1992) ("[T]he fact that the relationship has been a cordial one, of long duration, [is

not] evidence of a confidential relationship."), *superseded by statute on other grounds as noted in*

*Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 225–26 (Tex. 2002).

Moreover, "mere subjective trust does not . . . transform arm's length dealing into a fiduciary

relationship." *Schlumberger Tech.*, 959 S.W.2d at 177. Therefore, "the fact that [Grewal] [completely] trusted [S. Gill] does not transform their business arrangement into a fiduciary relationship." [18] *Meyer*, 167 S.W.3d at 331. For those reasons, the Court also grants J. Gill's motion for summary judgment on Grewal's breach of fiduciary duty claims.

CyMed also moved for summary judgment, providing proof that it did not exist during the time period of the events giving rise to the fiduciary duty claims. Grewal did not respond to this aspect of CyMed's motion for summary judgment. The CyMed Entities provided evidence that CyMed Tomball was created on August 10, 2011, and that CyMed Management Associates LLC was created on February 28, 2011. *See* (Doc. No. 30-1). Grewal's claims for breach of fiduciary duty occurred between October 2010 and January 2011. *See* (Doc. No. 91 at 4–10) (Grewal's Second Amended Counterclaim). Grewal did not put forward any evidence of a fiduciary relationship between himself and the CyMed Entities, nor did he allege any in his Second Amended Counterclaim. *See* (Doc. No. 91 at 12). Therefore, the Court also grants the CyMed Entities' motion for summary judgment with respect to the fiduciary duty claims.

### C. Grewal's Conversion Claims

In the Second Amended Counterclaim, filed on August, 23, 2019, Grewal brings for the first time a cause of action for conversion alleging that he had the right to immediate possession of any distributions made by Healthema and that the Gills wrongfully exercised dominion over those funds. (Doc. No. 91 at 15). The Gills argue that the statute of limitations has long since passed on the conversion claim. (Doc. No. 97 at 23–24). In response, Grewal argues that this

---

[18] Interestingly, in soliciting Gill's involvement in this medically related project, Grewal did not initially disclose the fact that he had been convicted and spent years in prison for making false statements related to a scheme to defraud Medicare—a fact that would certainly cause one to pause before entering into a venture in the medical field. *See United States v. Jagmohan Grewal*, 39 F.3d 1189 (9th Cir. 1994), *as amended on denial of reh'g and reh'g en banc* (Mar. 24, 1995). Certainly, a fiduciary would have disclosed such a fact before soliciting a million dollars for a project.

conversion cause of action relates back to his original counterclaim, and thus his previous claims tolled the statute of limitations.

The Court agrees with Grewal that his long-standing breach of contract claims tolled the statute of limitations. "[F]ederal law regarding relation back of amendments to pleadings is controlling in diversity cases in federal court." *Hensgens v. Deere & Co.*, 869 F.2d 879, 880 (5th Cir. 1989). Under Federal Rule of Civil Procedure 15(c)(1)(B), for statute of limitation purposes, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." As the Fifth Circuit has explained:

> [O]nce litigation involving particular conduct or a given transaction or occurrence has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of defenses or claims that arise out of the same conduct, transaction, or occurrence as set forth in the original pleading.

*FDIC v. Conner*, 20 F.3d 1376, 1380 (5th Cir. 1994). For that reason, the critical inquiry in considering whether an amendment relates back is "whether the opposing party was put on notice regarding the claim raised therein." *Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1566 (5th Cir. 1985). Grewal's conversion action is based on the same underlying factual occurrence as his breach of contract claims that appeared in his Original Complaint in cause number 4:14-cv-3223.

That being said, Grewal's claim has a more problematic aspect. Grewal's action for conversion would have been barred by Texas's statute of limitations at the time of Grewal's Original Complaint. The actions in this case all took place in January of 2011, and Grewal, who was intimately aware with the affairs of the company, knew all about the alleged conversion at that time. In Texas, conversion is subject to a two-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.003(a). Grewal's Original Complaint was filed on November 11, 2014, almost

two years after the statute of limitations passed and it would be another four plus years before

conversion was raised here.  Grewal argues that his causes of actions were saved by Texas's revival

statute—Texas Civil Practice & Remedies Code § 16.069.  Under this provision:

> (a) If a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required.
> (b) The counterclaim or cross claim must be filed not later than the 30th day after the date on which the party's answer is required.

TEX. CIV. PRAC. & REM. CODE § 16.069.  Essentially, Grewal argues that, even though he could

not bring his claims in his Original Complaint, he would have been entitled to bring them in his

Original Counterclaim, which was filed on May 14, 2015.  (Doc. No. 10).  While it may be true

that Grewal's conversion claims could have hypothetically been saved by the revival statute,[19]

Grewal did not bring a conversion action within the time allotted.  As such, Grewal's conversion

claim did not comply with the requirement in section 16.069(b) that the counterclaim be filed not

later than the 30th day after the date on which his answer was required.  Grewal has not brought

any authority to the Court's attention suggesting that he may stack the relation-back rule on top of

the revival statute to bootstrap a conversion claim that otherwise should have been alleged *six*

*years* prior to the first time it was mentioned in his Second Amended Counterclaim.  Therefore,

the Court grants the motion for summary judgment on Grewal's conversion claims as to all

Counter-Defendants.

---

[19] The language of the statute revives claims that "would be barred by limitation on the date the party's answered is required."  At least one federal court in Texas has interpreted this as meaning "[t]he statute of limitations should be measured from the filing of the complaint rather than the filing of any counterclaims in this case."  *Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*, No. 218CV00014JRGRSP, 2019 WL 4392957, at *3 n.2 (E.D. Tex. June 26, 2019) (citing TEX. CIV. PRAC. & REM. CODE § 16.069), report and recommendation adopted, No. 218CV00014JRGRSP, 2019 WL 2865079 (E.D. Tex. July 3, 2019).  In other words, the limitations period would start to run at the time of the accrual and would be tolled by the original petition or complaint filed that allows § 16.069 to be utilized.  This rationale seems sound.  Otherwise, by reviving other related claims that expired a year-and-a-half prior, the statute would incentivize parties to send demand letters baiting their counterparties into bringing declaratory judgment suits.

Even if it had been timely filed, Grewal's conversion action could not prevail for different reasons. In its show cause order, the Court questioned Grewal's ability to recover on a conversion claim. As stated there:

> Grewal has sued the Counter-Defendants for conversion. Normally, a member of an LLC cannot recover from another member of the LLC for conversion of the LLC's funds because the cause of action either belongs to the LLC and/or must be brought against the LLC. *Ghosh v. Grover*, 412 S.W.3d 749, 755–56 (Tex. App.— Houston [14th Dist.] 2013) (action for removing funds from LLC's bank account belongs to LLC); *Houston Nat. Bank v. Biber*, 613 S.W.2d 771 (Tex. App.— Houston [14th Dist.] 1981) (conversion action against bank proper where bank had obligation to treat specific money in a specific manner).

(Doc. No. 127 at 2). The Gills have additionally argued that Grewal cannot recover on the conversion action because the action either belongs to Healthema or is an action Grewal must bring against Healthema. Apart from contending that he may bring derivative claims directly under the Texas Business Organizations Code, Grewal did not respond to this argument. *See* (Doc. Nos. 129 & 131).

The Court finds Grewal does not possess standing to bring an action for conversion. Texas has a specific definition of conversion. "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). Under Texas Business Organizations Code § 101.106(b), "a member of a limited liability company . . . does not have an interest in any specific property of the company." For this reason, any funds that were withdrawn from Healthema were converted from Healthema, not Grewal. In accord with these two legal premises, Texas courts have held that a member of an LLC may not bring a conversion action for funds that were improperly withdrawn from the LLC's bank account. *See Ghosh v. Grover*, 412 S.W.3d 749, 755–56 (Tex. App.— Houston [14th Dist.] 2013,

no pet.). As Grewal is bringing this action individually, he may not seek to vindicate Healthema's rights to these funds.

Grewal's Second Amended Counterclaim might be read as attempting to artfully plead around this requirement. The pleading alleges that the funds that were converted were those that had already been distributed by the LLC. By this logic, Grewal may be alleging that the Gills held Grewal's shares of the distributions and converted those funds by not handing them over to Grewal. This artful pleading does not save Grewal. "Money is subject to conversion only when it can be identified as a specific chattel, and not where an indebtedness may be discharged by the payment of money generally. An action for conversion of money will only lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper." *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157, 161 (Tex. App.—Houston [14th Dist.] 1996, writ denied). While Healthema may be able to argue that it delivered the funds for safekeeping, Grewal may not. Instead, Grewal may only argue that Healthema did not treat those funds in the manner that it was supposed to, i.e. that Healthema should have paid his purported distribution to him directly, which it did not. *See Hous. Nat'l Bank v. Biber*, 613 S.W.2d 771 (Tex. App.— Houston [14th Dist.] 1981, writ ref'd n.r.e.) (conversion action against bank proper where bank had obligation to treat specific money in a specific manner). That action would need to be brought against or by Healthema, who is no longer a party to this suit. Therefore, the Court grants summary judgment against Grewal on the conversion claim.

CyMed also moved for summary judgment arguing that it was not in existence at the time of the alleged conversion and consequently could not be liable. The argument is obviously a good one, and the Court grants the motion. Additionally, as stated above the Court granted summary

judgment against Grewal on his conversion claim because either (1) it was barred by limitations; (2) he does not have standing under Texas law to bring those claims, or (3) that Grewal did not sue the proper defendant—Healthema.  All these rulings would further bar Grewal from recovering from CyMed.

### D.  Grewal's Unjust Enrichment Claim

In the Second Amended Counterclaim, Grewal alleges a cause of action for unjust enrichment alleging that the Gills and CyMed "are the wrongful beneficiaries of the funds, intellectual property, and other assets of Healthema." (Doc. No. 91 at 14).  In its show cause order, the Court questioned Grewal's ability to recover on his unjust enrichment claim.  As stated there:

> Grewal has sued the Counter-Defendants for unjust enrichment . . . .  There are contracts that govern both Grewal and the Gills' relationships to Healthema, and the existence of a contract normally precludes such actions.  *Humana, Inc. v. Shrader & Assocs., LLP*, 584 B.R. 658, 686 (S.D. Tex. 2018) (dismissing Texas unjust enrichment and money had and received claims because "Plaintiffs' claims for unjust enrichment/money had and received all hinged" on their entitlements under a contract).

(Doc. No. 127 at 2).  In their response to the show cause order, the Gills agreed that "the contracts made the basis of Grewal's breach of contract claim precludes Grewal's unjust enrichment . . . claim." (Doc. No. 128 at 11).  Grewal did not respond to this argument.  *See* (Doc. Nos. 129 & 131).  The Court finds that Grewal cannot sue for unjust enrichment for any claims relating to the funds allegedly taken from Healthema because any claim to the money is governed by the relevant contracts.  "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000).  The Operating Agreement expressly covers the distribution of Healthema's funds—the subject matter at issue here.  *See* (Doc. No. 97-6 at 24).

Therefore, the Court grants summary judgment against Grewal for his unjust enrichment claim on these grounds only as to Healthema's funds as to all Counter-Defendants.[20]

With respect to the "intellectual property," the Gills argue that the summary judgment evidence establishes that Grewal retained his business plan upon dissolution. (Doc. No. 97 at 23–24). In response, Grewal argues that he did not retain the business plan but that it remains the property of Healthema. (Doc. No. 103 at 25). Taking Grewal's argument as true, he cannot succeed on his claim the Gills were unjustly enriched by Healthema's intellectual property. "A person is unjustly enriched when he obtains a benefit from another by fraud, duress, or the taking of an undue advantage." *Ahmed v. Shah*, No. 01-13-00995-CV, 2015 WL 222171, at \*5 (Tex. App.—Houston [1st Dist.] Jan. 15, 2015, no pet). If this intellectual property still belongs to Healthema as Grewal alleges, then Grewal has not demonstrated that the Gills or CyMed received any benefit from it. To the extent that Grewal contends that these assets induced Grewal into forming Healthema, the exchange of Grewal's goodwill and intellectual property for a membership stake in Healthema is governed by the Operating Agreement, and therefore, Grewal cannot recover under the doctrine of unjust enrichment. *See Humana*, 584 B.R. at 686. The Court grants the Gills' motion for summary judgment on the entirety of Grewal's unjust enrichment claims as to all Counter-Defendants.

### E. Grewal's Money Had and Received Claim

In the Second Amended Counterclaim, Grewal brings for the first time (on August 23, 2019) a claim for money had and received, alleging that the Gills "hold money, including but not limited to Grewal's share of any and all distributions by Healthema, whether in the form of profits

---

[20] After cross-motions for summary judgment, responses and replies to those cross-motions, show-cause briefing, and responses and replies to the show-cause briefing, Grewal has not identified which "other assets of Healthema" that unjustly enriched the Gills or the CyMed Entities. Therefore, the Court grants summary judgment against Grewal as to the unjust enrichment claim relating to the "other assets of Healthema."

distributions, liquidating distributions, or otherwise, and/ or any proceeds or profits therefrom, that in equity and good conscience, belongs to Grewal." (Doc. No. 91 at 14).  The Gills argue that the statute of limitations has long since passed on the money had and received claim.  (Doc. No. 97 at 23–24).  In response, Grewal argues that this money had and received cause of action relates back to his original counterclaim, and thus his previous claims tolled the statute of limitations.

The Court finds the prevailing statute of limitations bars Grewal's money had and received claim.  Like conversion, a claim for money had and received is subject to a two-year statute of limitations.  *Pollard v. Hanschen*, 315 S.W.3d 636, 641 (Tex. App.—Dallas 2010, no pet.).  "A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy." *Clark v. Dillard's, Inc.*, 460 S.W.3d 714, 719 (Tex. App.—Dallas 2015, no pet.).  "A claim for money had and received generally accrues when money is [improperly] paid." *Merry Homes, Inc. v. Luc Dao*, No. 14-16-00724-CV, 2017 WL 4159206, at *3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.).  Here, the relevant date was in January 2011 when the Gills removed the funds from Healthema's bank accounts.  This claim accrued the same time that Grewal's conversion action with a two-year statute of limitations accrued, and therefore, Grewal's money had and received claim meets the same fate.  As such, the Court grants summary judgment against Grewal on his money had and received claim as to all Counter-Defendants.

Apart from the statute of limitations defense, Grewal's money had and received action could not prevail for a different reason.  In its show cause order, the Court questioned Grewal's ability to recover on a money had and received claim.  As stated there:

> Grewal has sued the Counter-Defendants for . . . money had and received.  There are contracts that govern both Grewal and the Gills' relationships to Healthema, and the existence of a contract normally precludes such actions. *Humana, Inc. v. Shrader & Assocs.*, LLP, 584 B.R. 658, 686 (S.D. Tex. 2018) (dismissing Texas

unjust enrichment and money had and received claims because "Plaintiffs' claims for unjust enrichment/money had and received all hinged" on their entitlements under a contract).

(Doc. No. 127 at 2). In their response to the show cause order, the Gills agreed that "the contracts made the basis of Grewal's breach of contract claim precludes Grewal's . . . money had and received claim." (Doc. No. 128 at 11). Grewal did not respond to this argument. *See* (Doc. Nos. 129 & 131). "Generally speaking, when a valid, express contract covers the subject matter of the parties' dispute, there can be no recovery under a quasi-contract theory." *Fortune Prod.*, 52 S.W.3d at 684. The Operating Agreement expressly covers the distribution of Healthema's funds—the subject matter at issue here. *See* (Doc. No. 97-6 at 24). Therefore, even if Grewal's claim was not barred by the statute of limitations, it is nevertheless inappropriate due to the existence of a contract covering the subject matter. The Court grants summary judgment against Grewal on his money had and received claim as to all Counter-Defendants.

## F. Grewal's Conspiracy Claims

Grewal alleged an action for conspiracy. The Gills argued that there can be no conspiracy action because civil conspiracy is a derivative tort and "summary judgment evidence establishes they did not commit an underlying tort." *See* (Doc. No. 97). In response, Grewal argued that his claims for breach of fiduciary duty and conversion are underlying torts that can support his conspiracy claim. The Court has granted summary judgment against Grewal on both of those claims. "[L]iability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). As there is no underlying tort for which one of the named defendants may be held liable, the Court grants the summary judgment against Grewal on his civil conspiracy claim as to all Counter-Defendants.

### G.  Grewal's Declaratory Judgment Claims

Grewal is seeking six different forms of declaratory relief.  Specifically, Grewal requests declarations that: (1) the economic purpose of Healthema and Doc Call Live is frustrated and that it is no longer reasonably practicable to carry out those entities; (2) Healthema and Doc Call Live shall be wound up and terminated; (3) Grewal is entitled to recover at least $246,512.15 as a distribution in liquidation of Healthema; (4) Grewal is entitled to a pro-rata share of property acquired through the use of Grewal's share of funds taken from or received from Healthema; (5) all funds taken from Healthema should be held in trust for the benefit of Grewal; and (6) the Gills provide a complete verified accounting of any and all funds taken or received from Healthema and any and all profits and proceeds received directly or indirectly from the use of funds taken or received from Healthema.  (Doc. No. 91 at 16–17).  The Gills moved for summary judgment on all of Grewal's claims for declaratory relief.  (Doc. No. 97 at 32–35).

1.      The first two claims should be addressed together, because they both effectively request the Court declare an end to Healthema and Doc Call Live.  From the Gills' briefing and evidence, it appears that Healthema has already been dissolved.  *See* (Doc. No. 128 at 8) ("Healthema no longer exists . . . .");  *see also* (Doc. No. 128-4) (Healthema Certificate of Termination).   It appears Grewal agrees with as much, and the documentation seems incontrovertible.  *See* (Doc. No. 128 at 5) ("Grewal believes this suit should continue before the Court as it has been plead [sic] because the Plaintiffs have caused Healthema LLC to be dissolved.").  Therefore, the issue regarding a declaration that Healthema be wound up may be moot.  Nevertheless, neither Healthema nor Doc Call Live are joined in this suit, meaning Grewal is asking a judgment that the companies be wound up *ex parte*.  The Court finds that the first two declaratory judgment claims are improper in the absence of Healthema and/or Doc Call Live as a

party. *Moore*, 919 F. Supp. at 1011 (request for judicial dissolution based on diminution of value in ownership share is a derivative action that requires business organization be joined as an indispensable party). Therefore, the Court grants summary judgment against Grewal on his first two declaratory judgment actions as to all Counter-Defendants.

2.      Grewal's third declaratory judgment action seeks a declaration that Grewal is entitled to recover at least $246,512.15 as a distribution in liquidation of Healthema. (Doc. No. 91 at 16). In its show cause order, the Court questioned whether Grewal could obtain such a declaration. The show cause order prompted the parties to respond to the following:

> Grewal is seeking a declaratory judgment that he is entitled to recover money as a distribution in liquidation of Healthema. A party cannot maintain an action to recover money where because the action is not properly brought against the defendant. Here, the proper action is an action against Healthema. *Kennebrew*, 425 S.W.3d at 600–01 (member of LLC was not jointly and severally liable for distributions owed by the LLC). Joining Healthema would defeat diversity jurisdiction.

(Doc. No. 127 at 3). The Gills contended that the reasoning outlined in the show cause order was correct and that it barred Grewal from recovering from the Gills on these claims individually. (Doc. No. 128 at 14). Apart from contending that he could bring this action as a direct action, Grewal did not reply to this portion of the show cause order. *See* (Doc. Nos. 129 & 131).

As held above, a suit for distributions in a liquidation is a direct suit that must be brought directly against the company. Healthema is no longer a party to this suit. Furthermore, "[e]xcept as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." *See* TEX. BUS. ORGS. CODE § 101.114. The Operating Agreement does not provide for the liability of any manager or member of the LLC. *See* (Doc. No. 97-6 at 23–28). Therefore, Grewal may not recover for this purported

obligation owed by Healthema under the Operating Agreement directly from the Gills. *See also Kennebrew*, 425 S.W.3d at 600–01 (member of LLC was not jointly and severally liable for distributions owed by the LLC). The Court grants summary judgment against Grewal on his third declaratory judgment action as to all Counter-Defendants.

      3.     Grewal's fourth declaratory judgment claim seeks a declaration that Grewal is entitled to a pro-rata share of property acquired through the use of Grewal's share of funds taken from or received from Healthema. (Doc. No. 91 at 16). Grewal's fifth declaratory judgment claim seeks a declaration that all funds taken from Healthema should be held in trust for the benefit of Grewal. *Id.* As both these claims request declarations relating to Grewal's rights *vis-à-vis* the assets taken from Healthema, the Court will consider them together. The Court's show cause order required the parties to respond to the following:

> Grewal is seeking a declaratory judgment that he is entitled to a pro-rata share of property acquired through the use of Grewal's share of funds taken from or received from Healthema. A party cannot prevail personally when the property in question is owned by an LLC (here Healthema); the party can only sue derivatively, but the derivative suit requires joining the LLC as an indispensable party. *See* TEX. BUS. ORGS. CODE § 101.106(b) (property provided to LLC became property of LLC); *see also Moore*, 919 F. Supp. at 1011 (suit to recoup misappropriated property of LLC must be brought derivatively). Joining Healthema would defeat diversity jurisdiction.
>
> Grewal is seeking a declaratory judgment that all funds taken from Healthema should be held in trust for the benefit of Grewal. A party cannot prevail for the same reasons mentioned in the previous [paragraph]. *See id.*

(Doc. No. 127 at 3–4). Not surprisingly, the Gills agreed that Grewal could not recover on his fourth and fifth declaratory judgment claims for the reasons mentioned in the Court's show cause order. (Doc. No. 128 at 8–9). Apart from contending that he could bring this action as a direct action, Grewal did not reply to this portion of the show cause order. *See* (Doc. Nos. 129 & 131).

As has been discussed before, "[a] member of a limited liability company . . . does not have an interest in any specific property of the company." TEX. BUS. ORGS. CODE § 101.106(b). Any action to recoup LLC assets that were misappropriated must be brought derivatively on behalf of the LLC. *See Abdu*, 2018 WL 6716547, at \*3 ("A corporate shareholder lacks standing to sue in her own name or for her own benefit on a cause of action belonging to the corporation, even if the shareholder is indirectly injured through injury to the corporation. This applies to closely held corporations and to sole shareholders."). Grewal brought this suit in his individual capacity. Therefore, the Court grants summary judgment against Grewal on his fourth and fifth declaratory judgment claims as to all Counter-Defendants.

4.      Grewal's sixth declaratory judgment claim seeks "a declaration that the Gills provide a complete verified accounting of any and all funds taken or received from Healthema and any and all profits and proceeds received directly or indirectly from the use of funds taken or received from Healthema." (Doc. No. 91 at 16–17). Grewal argues that this is an action for "an accounting and tracing of the profits earned from Plaintiffs' investment of money that belongs to him in the CyMed Entities and other ventures." (Doc. No. 103 at 27). This appears to be a suit related to judgment collection. Therefore, an accounting to effectuate collection of that judgment is not necessary or warranted until Grewal has shown a right to recover. For that reason, the Court grants the motion for summary judgment in favor of CyMed and S. Gill but defers ruling on Grewal's request for an accounting as to J. Gill and JGBG.

### H. Grewal's Veil-Piercing Claim

In Grewal's Second Amended Counterclaim, he alleges that "[t]o the extent that any ground of liability in this pleading may otherwise be found applicable only to JGBG LLC, CyMed Management Associates LLC, and/ or CyMed Tomball PA, the corporate form of those entities

should be disregarded to hold J. Gill and S. Gill jointly and severally liable with such entities."
(Doc. No. 91 at 19).  Generally, veil piercing "permits a plaintiff to pierce an entity's 'corporate
veil' and hold the entity's shareholders, directors, and officers individually liable for the entity's
obligations." *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex.
App.—Houston, [14th Dist.] 2018, no pet.).  The Court has held that Grewal does not have any
causes of action which he can maintain against S. Gill, CyMed Management Associates LLC,
and/or CyMed Tomball PA.  Therefore, there is no obligation owed by these companies for which
veil-piercing could apply.  As such, the Court grants summary judgment against Grewal on his
veil-piercing claims against those entities and S. Gill.  The Court has held that a breach of contract
action will proceed to trial against J. Gill and JGBG.  JGBG has two members, J. Gill and his wife,
Balbindar Gill.[21]  *See* (Doc. No. 74 at 2).  Therefore, the Court denies summary judgment as to J.
Gill or JGBG on Grewal's veil-piercing claim.

## I.  Summary of This Court's Ruling Regarding Grewal's Claims

For the reasons discussed above, the Court grants summary judgment against Grewal, and
in favor of all Counter-Defendants, on all of the causes of action that he alleged in the Second
Amended Counterclaim, with the exception of his breach of contract claim against J. Gill and
JGBG for breaching the Addendum by "preventing Grewal from exercising primary responsibility
and authority for making operational decisions" pursuant to the Addendum, his veil-piercing claim
against J. Gill and JGBG, and the claim for an accounting as to them.

---

[21] Balbindar Gill is not a party to this suit.

## VI.    The Gills' First Amended Complaint

In their First Amended Complaint (the current live pleading), the Gills[22] seek five forms of declaratory relief.    Specifically, the Gills request declarations that: (1) Grewal breached the fiduciary duties owed to the Gills; (2) the Gills may not be held liable for any purported breach of Grewal's Employment Agreement; (3) the Gills may not be held liable for any matter arising out of the events in their complaint; (4) Grewal is not entitled to the assets of Healthema; and (5) the Gills do not owe Grewal attorneys' fees or other costs or fees related to this action.  The Gills moved for summary judgment on each of their claims. (Doc. No. 97).  Grewal moved for summary judgment on claims (1) and (2).  (Doc. No. 98).

### A.    The Gills' Declaratory Judgment Claim on Grewal's Alleged Breach of Fiduciary Duties

In their First Amended Complaint, the Gills allege that Grewal "breach[ed his] fiduciary duties of obedience, loyalty and due care as a Manager and Member of Healthema, L.L.C., owed to Plaintiffs." (Doc. No. 90 at 6).  Grewal moved for summary judgment against the Gills.  The Court grants that motion.  In Texas, members in a limited liability company do not owe a formal fiduciary duty to one another. *See Guevara v. Lackner*, 447 S.W.3d 566, 580 (Tex. App.—Corpus Christi 2014, no pet.).  Further, as has been discussed above, courts do not create informal fiduciary relationships lightly, especially in the context of business relationships. *See Schlumberger Tech.*, 959 S.W.2d at 177.  The Court cannot find any facts differentiating the Gills' claim for the existence of an informal fiduciary duty from Grewal's claim discussed above.  The Court granted summary judgment against Grewal on that claim in this same order, and it grants summary judgment against the Gills' breach of fiduciary duty claims against Grewal.  That leaves the only

---

[22] CyMed Management Associates LLC and CyMed Tomball P.A. are not Plaintiffs in the Gills' First Amended Complaint.

claim for a purported breach of a fiduciary obligation as the one Grewal owed to Healthema. As was the case with Grewal's claims, the Gills have not pleaded this action derivatively so as to be able to sue "in the right of [Healthema]." TEX. BUS. ORGS. CODE § 101.451(1). Healthema is not a party to this suit, and the Gills may not sue on its behalf any more than Grewal can. Therefore, the Court grants Grewal's motion for summary judgment against the Gills on their declaratory judgment action seeking a declaration that Grewal breached his fiduciary duties. *Siddiqui*, 504 S.W.3d at 360 ("a member of a limited liability company lacks standing to assert claims individually when the cause of action belongs to the company").

### B. The Gills' Declaratory Judgment Claim for Their Liability on Healthema's Alleged Breach of the Employment Agreement

In their First Amended Complaint, the Gills allege that Grewal breached the terms of his employment contract with Healthema and sought a declaration reflecting as much. (Doc. No. 90 at 6–7). The Gills moved for summary judgment on their declaratory judgment action whereby they claim that they cannot be liable under the Healthema/Grewal Employment Agreement. They claim that the Employment Agreement was between Healthema and Grewal, and that since Healthema is no longer a party to this suit they cannot be held liable. Moreover, they point out that Grewal's Second Amended Counterclaim abandons this claim against Healthema. Grewal's only reference to these claims are in his own motion for partial summary judgment, where he argues that the facts show a breach of the agreement.

"Except as and to the extent the company agreement specifically provides otherwise, a member or manager is not liable for a debt, obligation, or liability of a limited liability company, including a debt, obligation, or liability under a judgment, decree, or order of a court." TEX. BUS. ORGS. CODE § 101.114. Nothing in the Operating Agreement abridges the limited liability of Gills with respect to the employment agreement. As Grewal has not put forward any summary judgment

evidence suggesting that the Gills may be held liable for this claim, the Court grants the Gills' motion for a declaratory judgment that they are not liable to Grewal under the Employment Agreement. The Court makes no finding on the substantive merits of Grewal's breach of the employment contract action *vis-à-vis* Healthema—only that the Plaintiffs here (J. Gill, S. Gill, and JGBG) may not be held directly liable. *See PNC Bank, N.A. v. 2013 Travis Oak Creek GP, LLC*, No. 1:17-CV-560-RP, 2018 WL 6431005, at *11 (W.D. Tex. Sept. 28, 2018) (no right to bring declaratory judgment action where suit was brought by a third-party who signed the contract in capacity as general partner to the partnership). The Court grants the Gills' motion for summary judgment on this point.

### C. The Gills' Declaratory Judgment Claim for Their Liability on the Events Giving Rise to Their Complaint

The Gills seek a declaratory judgment stating that they "do not owe [Grewal] any money or other assets of any kind under the terms of any contract or purported contract or under any other theory of law whatsoever for any matter arising out of any of the events or circumstances described above and/or giving rise to this complaint." (Doc. No. 90 at 7). The declaratory judgment sought by the Gills is so broad and non-specific that the Court has trouble understanding what the basis of their motion is. It appears the Gills want a declaratory judgment that they will never be held liable to Grewal under this or any related fact pattern ever, under any legal theory one could possibly imagine. Not only does this flout well-established pleading requirements, the Gills do not provide any authority for the proposition that they are entitled to receive such broad declaratory relief in their motion for summary judgment.

The most that the Gills put forward in support of this claim in their motion for summary judgment is that Grewal is not entitled to thirty percent of Healthema's assets. *See* (Doc. No. 97 at 20). The Court clearly cannot award such a judgment in the absence of Healthema. The Court

has already held that Grewal may not litigate claims relating to the assets of Healthema without it

joined as a party to this suit.  The same is true for the Gills.  Healthema is not (and cannot be)

joined in this suit.  The Gills argue that Healthema is a dispensable party to the lawsuit because it

has been dissolved.  *See* (Doc. No. 128 at 16–17).  For some claims this may be true, but the Gills

are asking for a judgment in their favor under all possible legal theories and factual patterns.

Moreover, as alluded to, Texas law keeps an entity alive after dissolution for purposes of litigation.

Under the statute:

> Notwithstanding the termination of a domestic filing entity . . . , the terminated
> filing entity continues in existence until the third anniversary of the effective date
> of the entity's termination only for purposes of . . . prosecuting or defending in the
> terminated filing entity's name an action or proceeding brought by or against the
> terminated entity.

TEX. BUS. ORGS. CODE § 11.356(a)(1).  Healthema was terminated on November 27, 2019, and,

under Texas law, it remains in existence for the purpose of litigating suits similar to this one until

November 27, 2022.  *See* (Doc. No. 128-4).  This Court cannot issue judgment determining the

rights of Healthema *ex parte* nor can it do the same against Grewal based upon some un-pleaded

theory of law or fact pattern.[23]  Therefore, the Court denies the Gills' motion for summary

judgment.

### D. The Gills' Declaratory Judgment Action Relating to the Assets or Holdings of Healthema

In their First Amended Complaint, the Gills seek a declaration that Grewal "is not entitled

to any of the assets or holdings of Healthema, L.L.C., or any related or non-related entities named

or discussed in this complaint and is hereinafter estopped from claiming any ownership or interest

in any such assets or holdings." (Doc. No. 90 at 7).  Similar to the previous claim, the Court finds

---

[23] Since neither the underlying facts nor putative legal theories are set out, it would be impossible for this, or any other, court to conclude whether or not a disputed issue of material fact existed.

that this action cannot be maintained in the absence of Healthema. A consistent theme running through this order is the inability of this Court to properly assess the merits or award any relief without Healthema joined as a party. The same is true here. Grewal's entitlement to the assets or holdings of Healthema turns on the substantive rights of Healthema, and this Court cannot issue a declaration regarding those rights without providing Healthema a chance to weigh in, which cannot be accomplished without defeating federal subject matter jurisdiction. Further, the Court cannot grant the Gills' requested relief because Grewal could still hypothetically bring an action to recover derivatively in state court. While that action may face a number of legal hurdles, those are issues for the state court to consider. Furthermore, it is very questionable whether the Gills have standing to bring this claim in their individual capacities. Therefore, the Court denies the motion for summary judgment filed by the Gills relating to the assets or holdings of Healthema and other entities.

### E. The Gills' Declaratory Judgment Action Relating to Costs and Fees

In their First Amended Complaint, the Gills seek a declaration that they "do not owe any money to Grewal for attorneys' or other fees or costs of any type whatsoever for any matter arising out of any of the events or circumstances described above and/or giving rise to this action." (Doc. No. 90 at 7). For the reasons mentioned above, the Court cannot give this relief in its entirety. The Court does, however, agree that this can be granted in part as to S. Gill, who has prevailed on all of Grewal's claims against him. Therefore, the Court grants S. Gill's motion for summary judgment that he is entitled to a declaratory judgment that he does not owe Grewal attorneys' or other fees or costs.

**VII.  Conclusion**

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** the motion for summary judgment filed by J. Gill and JGBG.  (Doc. No. 97).  The Court also **GRANTS IN FULL** the motions for summary judgment filed by S. Gill and the CyMed Entities as they pertain to Grewal's claims.  (Doc. Nos. 97 & 116).  The Court also **GRANTS IN PART AND DENIES IN PART** Grewal's Motion for Summary Judgment.  (Doc. No. 98).  Specifically, with respect to Grewal's causes of action:

A. The Court **GRANTS** the summary judgment filed by the Gills and CyMed in full against Grewal on each of his breach of contract actions with the exception of Grewal's allegation that JGBG and J. Gill breached the Addendum by preventing Grewal from exercising primary responsibility and authority for making operational decisions.  The Court also **DENIES** Grewal's motion for summary judgment on his breach of contract claims.  All of Grewal's breach of contract claims against S. Gill, CyMed Management Associates LLC, and CyMed Tomball P.A. are hereby **DISMISSED WITH PREJUDICE**.  With the exception of the claim under the Addendum, all other breach of contract claims against JGBG and J. Gill are hereby **DISMISSED WITH PREJUDICE**.  The claim relating to the breach of the Addendum by JGBG and J. Gill will proceed to trial.

B. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on his breach of fiduciary duty claims.  All of Grewal's breach of fiduciary duty claims are hereby **DISMISSED WITH PREJUDICE** as to all Counter-Defendants.

C. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on his conversion claims.  The Court also **DENIES** Grewal's motion for summary judgment on his conversion claims.  All of Grewal's conversion claims are hereby **DISMISSED WITH PREJUDICE** as to all Counter-Defendants.

D. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on his unjust enrichment claims. The Court also **DENIES** Grewal's motion for summary judgment on his unjust enrichment claims.  All of Grewal's unjust enrichment claims are hereby **DISMISSED WITH PREJUDICE** as to all Counter-Defendants.

E. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on his money had and received claims.  The Court also **DENIES** Grewal's motion for summary judgment on his money had and received claims. All of Grewal's money had and received claims are hereby **DISMISSED WITH PREJUDICE** as to all Counter-Defendants.

F. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on his civil conspiracy claims. All of Grewal's civil conspiracy claims are hereby **DISMISSED WITH PREJUDICE** as to all Counter-Defendants.

G. The Court **GRANTS** the motions for summary judgment filed by the Gills and CyMed in full against Grewal on each of his declaratory judgment actions with the exception of Grewal's suit against J. Gill and JGBG seeking an accounting of funds taken or received from Healthema.  The Court also **DENIES** Grewal's motion for summary judgment on his declaratory judgment actions.  All of Grewal's declaratory claims against S. Gill, CyMed Management Associates LLC, and CyMed Tomball P.A. are

hereby **DISMISSED WITH PREJUDICE**. With the exception of the claim seeking an accounting, all other declaratory judgment claims against JGBG and J. Gill are hereby **DISMISSED WITH PREJUDICE**. Resolution of the claim against J. Gill and JGBG seeking an accounting will occur at trial.

H. The Court **GRANTS** the motions for summary judgment filed by S. Gill and CyMed against Grewal on his piercing the corporate veil action against S. Gill, CyMed Management Associates LLC, and CyMed Tomball P.A. Grewal's piercing the corporate veil claims against S. Gill, CyMed Management Associates LLC, and CyMed Tomball P.A. are hereby **DISMISSED WITH PREJUDICE**. The Court **DENIES** the motion for summary judgment on Grewal's veil piercing claims filed by J. Gill and JGBG. Those claims will proceed to trial.

With respect to the Gills' claims:

A. The Court **GRANTS** the motion for summary judgment filed by Grewal against the Gills on their declaratory judgment claim seeking a declaration that Grewal breached his fiduciary duties. The Gills' claim for breach of fiduciary duty is hereby **DISMISSED WITH PREJUDICE**.

B. The Court **GRANTS** the motion for summary judgment filed by the Gills on their declaratory judgment claim seeking a declaration that they may not be held personally liable to Grewal for the alleged breach of Grewal's Employment Agreement with Healthema. The Court also **DENIES** Grewal's motion for summary judgment on this claim.

C. The Court **DENIES** the Gills' motion for summary judgment on their declaratory judgment claim seeking a declaration that they may never be held liable to Grewal

under any theory of law or any set of circumstances giving rise to their First Amended Complaint.

D. The Court **DENIES** the Gills' motion for summary judgment on their declaratory judgment claim seeking a declaration that Grewal is not entitled to the assets of Healthema.

E. The Court **GRANTS** S. Gill's motion for summary judgment on his declaratory judgment claim that he does not owe Grewal any attorneys' fees or other fees or costs related to this action. The Court **DENIES** J. Gill and JGBG's motion for summary judgment seeking the same.

The Court emphasizes that these rulings should not be construed to affect the rights or duties of persons or entities who are not currently parties. Further, this Court has held that Grewal is only suing in his individual capacity, and, having so held, the Court's rulings are likewise limited to him in that capacity.

Signed this _15_ day of June, 2020.

Andrew S. Hanen
United States District Judge