United States District Court
Southern District of Texas
**ENTERED**
August 12, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JASWANT SINGH GILL, *et al*, § <br> § <br> Plaintiffs, § <br> VS. § <br> § <br> JAGMOHAN SINGH GREWAL, § <br> § <br> Defendant. § | CIVIL ACTION NO. 4:14-CV-2502 |

## ORDER

Plaintiffs/Counter-Defendants Jaswant Singh Gill ("J. Gill") and Jaswant Singh Gill and Balbindar Gill, LLC ("JGBG") have filed a motion for summary judgment. (Doc. No. 139). Counter-Plaintiff/Defendant Jagmohan Singh Grewal ("Grewal") filed a response. (Doc. No. 140). The Gills filed a reply. (Doc. No. 141-1).[1]

### I.    Factual Background

This suit arises out of a failed business venture between Jaswant Singh Gill, Shaun Singh Gill, and Jagmohan Singh Grewal. This Court has written extensively on the facts in this case, so it will not do so here. Nevertheless, a brief recap is necessary for context. J. Gill and Grewal attended college together in the late 1960s. After falling out of touch with each other for over thirty years, the two reconnected at a wedding in September 2010. The day after the wedding, Grewal pitched J. Gill an entrepreneurial venture related to the healthcare industry. In essence, the proposed company would provide phone consultations to patients located in the United States by doctors based in India. After some back and forth, including the revocation of an initial agreement after J. Gill learned that Grewal had previously been convicted for making false

---

[1] The Gills sought leave to file a reply. (Doc. No. 141). That motion is granted.

statements in connection with a scheme to defraud Medicare, the parties agreed to launch a company—Healthema, LLC ("Healthema").

The parties formed Healthema in October 2010. On November 20, 2010, Healthema's Operating Agreement was executed. Pursuant to the Operating Agreement, Grewal and JGBG—an LLC owned by J. Gill—would serve as members of the LLC. (Doc. No. 98-1 at 6). The Operating Agreement stated that the members would make initial capital contributions to the business and that "[t]he agreed value of such property and cash is $1,000,000.00 (ONE MILLION DOLLARS)." *Id.* at 2 (Operating Agreement art. 2.1). The Operating Agreement also stipulated that over time JGBG would make $1 million worth of "Capital Contributions." *See* (Doc. No. 98-1 at 7). Under the Operating Agreement, the parties held the following titles: J. Gill was the Chairman; J. Gill's son, S. Gill, was the Chief Executive Manager; and Grewal was the Strategic Advisor to the Chairman. *See id.* at 5. The Operating Agreement was signed in each party's capacity as either a member or manager of the LLC. *See id.* at 5.

The same day, the parties signed the Organizational Resolutions of the Managers of Healthema, LLC (the "Organizational Resolutions"). (Doc. No. 97-6 at 16–18). Under the Organizational Resolutions, the LLC ownership was divided into seventy percent and thirty percent interests to JGBG and Grewal, respectively. *Id.* at 16–17. JGBG's ownership stake was in exchange for a staggered $1 million capital contribution,[2] while Grewal's stake was in exchange for his goodwill and intellectual property. *Id.* at 17. The Organizational Resolutions also contemplated eventually increasing Grewal's "equity position" and decreasing JGBG's "equity position" once the company achieved profitability. *Id.* Finally, the Organizational Resolutions adopted as acts of the company any prior actions taken by the managers that were within the

---

[2] JGBG agreed to provide $100,000 on November 1, 2010, an additional $400,000 on December 1, 2010, an additional $300,000 on January 1, 2011, and a final $200,000 on the first full day of operations. (Doc. No. 97-6 at 29).

authority conferred. (Doc. No. 97-6 at 21). On November 20, 2010, the Organizational Resolutions were signed by J. Gill, S. Gill, and Grewal in their capacity as managers of Healthema.

J. Gill and Grewal signed a one-page Addendum 1 to the Operating Agreement (the "Addendum") on November 21, 2010. *See* (Doc. No. 98-2). Under the Addendum, they reaffirmed that Grewal's initial equity position would be thirty percent, but they agreed that his interest would increase after the company achieved profitability. *Id.* It was also agreed that "during the pre-operational phase and the first three years of operations, Jagmohan Singh Grewal will have the primary responsibility and authority for making operational decisions with advice from both Jaswant Singh Gill and Shaun Singh Gill." *Id.* Finally, J. Gill and Grewal agreed that, to the extent any conflict existed between the Addendum and the Operating Agreement, the Addendum would prevail. *Id.* The Addendum was signed by Grewal in his individual capacity and by J. Gill either in his individual capacity or on behalf of JGBG.

Grewal and Healthema also entered into an employment contract (the "Employment Agreement"). Under the terms of the Employment Agreement, signed on November 1, 2010, Healthema hired Grewal as a strategic advisor. The contract was payable to a third-party corporation, Amind Corporation, which has not been involved in this suit. The Employment Agreement explicitly states that it was between Healthema and Grewal/Amind Corporation. *See* (Doc. No. 97-6 at 32).

The dispute between the parties began when Healthema started taking steps towards becoming operational. Along the way, the parties encountered various organizational issues, including the fact that Indian doctors could not prescribe medications to patients in the United States. Additionally, to gain access to permits in "Special Economic Zones" ("SEZs") in India, Grewal formed Healthema India Private Limited ("HIPL"), an India corporation. Grewal was in

India and incurring expenses on behalf of Healthema as the preparation progressed. Many of the expenses incurred were paid for by the cash contributions JGBG had made to Healthema. The parties dispute whether all these preparations were necessary or adequately performed. Grewal contended that to receive the necessary approval, Healthema would need $750,000 of its funds to be transferred to HIPL's accounts. The Gills objected to this request because, in creating HIPL, Grewal gave himself more managerial capacity than he would have had under the Healthema Operating Agreement. According to the Gills, Grewal had sole access to the HIPL bank account. Further, the Gills expressed concern that this $750,000 requirement could not be found in the checklist provided by the consultant Grewal hired to help receive the SEZ permits. Since all of these funds were provided by JGBG, the Gills were concerned about transferring these funds to bank account in a foreign country that was controlled solely by Grewal. Eventually, the Gills refused to transfer the money, and Grewal argues this set the business back in obtaining the permits.

Grewal contends that the Gills then attempted to re-negotiate the terms of their agreement. The Gills acknowledge that they sought an additional memorandum of understanding ("MOU") to "formalize the relationship between . . . HIPL and Healthema." (Doc. No. 97 at 11). The Gills sent a draft of the MOU to Grewal on January 19, 2011. Under the terms of the MOU, certain expenditures required approval by J. Gill or S. Gill or both. *See* (Doc. No. 97-7 at 29).

The next day, S. Gill sent an email to Grewal threatening to cancel their contractual relationship if Grewal did not sign the new MOU. *See* (Doc. No. 98-13). Grewal responded on January 21, stating that he would seek alternative funding and that he would return the funds invested by the Gills. *See* (Doc. No. 97-7 at 35) ("I will refund every penny including funds spent by Shaun so that you will have $1 million intact to invest in something that you both feel is more

appropriate."). In the same email, Grewal stated that J. Gill could "have [S. Gill] dissolve Healthema, LLC and Doc Call Live, LLC."[3] *Id.* In an email the next day, Grewal stated that "I have decided to run this business on my own by bringing in other investor(s) in a way as I originally intended." (Doc. No. 97-7 at 42).

In response to Grewal's decision to go a different direction, S. Gill, acting on behalf of Healthema, sent a letter to Grewal terminating his employment agreement. *See* (Doc. No. 97-7 at 45). After this exchange, Grewal alleges that from January 24, 2011 to the end of the month, the Gills withdrew a total of $697,149.74 from Healthema's funds.[4] HIPL's SEZ approval was denied for lack of funding, and Grewal contends that he was required to pay HIPL's employees out of pocket.

Litigation ensued in India relating to a payment for a single invoice under the Employment Agreement and the return of a deposit for the business lease. That litigation ended by 2013, when the Court in India enjoined HIPL from disposing of any assets and ordered the deposit be returned to Healthema. Subsequently, Grewal sent a demand letter to the Gills demanding payment of his capital contribution, which Grewal argued was "the value of his 30% equity stake in Healthema." (Doc. No. 97-1 at 3). Grewal also demanded thirty-eight months' worth of salary paid pursuant to the terminated Employment Agreement. *Id.* This litigation ensued.

In June, the Court issued a lengthy order granting summary judgment on a majority of the claims at issue. Only two of Grewal's claims remained—a breach of contract claim against J. Gill and/or JGBG for breach of the Addendum and a veil-piercing claim. During a telephone hearing, J. Gill and JGBG requested leave to file a second motion for summary judgment against Grewal

---

[3] Doc Call Live was the name Grewal provided to his business plan.
[4] Prior to this time, J. Gill (via JGBG) had placed $800,000 in cash into Healthema. It represented 100% of Healthema's cash. The amount that was withdrawn represents what was left from these original contributions minus the amounts Grewal (and perhaps others) had already expended to try to set up this venture.

on these two claims based on an affirmative defense. The Court granted that motion, *see* (Doc. No. 138), and J. Gill and JGBG filed their motion for summary judgment. (Doc. No. 139).

## II. Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321-25.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Marsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III. Discussion

Grewal's remaining breach of contract claim alleges that the J. Gill and/or "prevent[ed] Grewal from exercising 'primary responsibility and authority for making operational decisions' pursuant to the Addendum." (Doc. No. 91 at 11). J. Gill and JGBG moved for summary judgment on this claim arguing that their performance under the Addendum was excused because Grewal repudiated the contract. "Under the doctrine of repudiation, a party's performance under a contract

is excused if the opposing party has repudiated the contract." *Med. Imaging Sols. Grp., Inc. of Texas v. Westlake Surgical, LP*, 554 S.W.3d 152, 157 (Tex. App.—San Antonio 2018, no pet.). "To constitute a repudiation, a party to a contract must have absolutely and unconditionally refused to perform the contract without just excuse." (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

The Court finds that a material issue of fact exists as to whether the Addendum was repudiated by Grewal. J. Gill and JGBG rely on two emails written by Grewal. Grewal argues that the Gills selectively quoted these emails. The Court does not believe it is necessary to consider either of these emails, because a fact issue exists as to whether Grewal had a just excuse to purportedly refuse performance under the Addendum. The emails constituting the purported repudiation were sent in response to an email to Grewal by J. Gill stating that:

> As an employee of Amind Corporation and consultant to Healthema, LLC, you have **no** delegated/operating authority to spend, commit or use of Healthema, LLC resources. Your business conduct on behalf of Healthema, LLC must adhere to the directives from Shaun Gill, CEO and General counsel, Healthema., LLC. CEO Is responsible for assuring that policies and guidelines exist to comply with regulatory requirements.

(Doc. No. 97-7 at 36). Grewal's remaining breach of contract claim is based on a clause in the Addendum where the parties agreed that "during the pre-operational phase and the first three years of operations, Jagmohan Singh Grewal will have the primary responsibility and authority for making operational decisions with advice from both Jaswant Singh Gill and Shaun Singh Gill." (Doc. No. 98-2). The email quoted above at the very least creates a fact issue as to whether J. Gill and JGBG breached the Addendum prior to Grewal's repudiation. This could provide Grewal with a just excuse for his repudiation, making the defense unavailable to J. Gill and JGBG. Therefore, the JGBG's motion for summary judgment as to the defense of repudiation is **DENIED**.

J. Gill and JGBG also moved for summary judgment on the remaining Grewal's sixth declaratory judgment claim requesting an accounting of funds taken or received from Healthema,

Grewal's veil piercing claim, and J. Gill and JGBG's request for a declaration that they do not owe Grewal any attorneys' fees. The motion is based on the defense of repudiation eliminating Grewal's final substantive cause of action. As the Court has found a fact issue exists as to the defense of repudiation, the Court **DENIES** this aspect of the motion as well.

### IV. Conclusion

For the foregoing reason, the Court **DENIES** J. Gill and JGBG's motion for summary judgment. (Doc. No. 139).

Signed this 12 day of August, 2020.

Andrew S. Hanen
United States District Judge